Anthony T. Caso (Cal. Bar #88561)
Email: atcaso@ccg1776.com
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164

Charles Burnham (D.C. Bar# 1003464)*
Email: charles@burnhamgorokhov.com
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
* admitted pro hac vice

Attorneys for Plaintiff

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN C. EASTMAN, | Case No.: _____ |
|     *Plaintiff - Appellant*, | |
| vs. | |
| BENNIE G. THOMPSON, *et al.* | |
|     *Defendants - Appellees* | |

## MOTION TO STAY PENDING APPEAL

Dr. John Eastman, through undersigned counsel, respectfully asks this Court to issue a stay pending appeal of the portions of district court's order of October

1

19, 2022 (ECF 372) directing production of 8 of Dr. Eastman's privileged communications under a crime-fraud exception.

On October 27, 2022, Plaintiff-Appellant filed a motion for reconsideration pursuant to District Court Local Rule 7-18(c) or, in the alternative, a stay pending appeal pursuant to Fed. R. Civ. P. 62(c), on the ground that the relevant context shows that this ruling was clearly erroneous. ECF 373, attached hereto as Exhibit A. In support of that motion, Dr. Eastman submitted a Declaration identifying specific documents that were before the district court, which demonstrated the relevant context. Because many those documents were themselves privileged (and had been found to be privileged, either as attorney-client communications or attorney work product, by the district court), that Declaration was submitted for the Court's *in camera* review. ECF 374. It is likewise submitted under seal here.

The district court has not yet ruled on that motion,[1] but it ordered production of the disputed documents by 2 p.m. Pacific time on October 28, 2022. An immediate stay pending appeal is therefore necessary to prevent the dispute from becoming moot at least in part.

---

[1] We acknowledge that the motion was not filed for a week after the district court's order, but lead counsel for Plaintiff-Appellant had a number substantive hearings during that time frame, and co-counsel was traveling abroad without ready access to email and did not return to the United States until October 27. The subject materials themselves had to be re-reviewed in light of the district court's ruling.

2

# BACKGROUND

Dr. Eastman represented former President Trump in a number of election-related matters following the November 3, 2020 presidential election. Ostensibly pursuant to its authority to investigation the breach of the United States Capitol that occurred on January 6, 2021, the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") issued in late January 2022 a subpoena to Dr. Eastman's former employer, Chapman University, to obtain a broad scope of documents related to the 2020 election in general and Dr. Eastman's representation of former President Trump in particular. Chapman University identified more than 20,000 documents (mostly emails and attachments) totaling more than 94,000 pages that were responsive to the subpoena. Dr. Eastman filed for an emergency TRO in the United States District Court for the Central District of California (where Chapman University is located) in order to meet his ethical obligations to his clients and prevent the disclosure of privileged communications. The district court granted the TRO, blocking Chapman from releasing the documents to the Select Committee, and then ordered Dr. Eastman to conduct a privilege review of the documents himself.

That review was conducted between January and April 2022. Pursuant to that review, Dr. Eastman asserted privilege over approximately 3,700 documents,

3

which involved communications with more than 65 different clients or prospective clients; work-product communications between attorneys, experts, and advisors working on a number of post-election legal challenges; and confidential communications with a private membership organization that implicated the First Amendment's freedom of speech and association. At the Select Committee's request, the district court initially reviewed 111 documents that had been created between January 4, 2021 and January 7, 2021. ECF 260, at 3. On March 28, 2022, the district court held that Dr. Eastman had not met his burden of demonstrating that 100 of the documents were attorney-client privileged or, for work product, prepared in anticipation of litigation and ordered them produced. The court also found that, of the 11 documents it held to be protected with either the attorney-client privilege or the work-product doctrine, a single document – an email not authored by Dr. Eastman and on which his client, former President Trump, was not copied – had to be disclosed pursuant to the crime-fraud exception. As the district court described it, that email forwarded to Dr. Eastman a "draft memo" that had been "written [on December 13, 2020] for President Trump's attorney Rudy Giuliani," and which "recommended that Vice President Pence reject electors from contested states on January 6." In the district court's view, the memo was "both intimately related to and clearly advanced the plan to obstruct the Joint Session of Congress on January 6, 2021," and therefore "likely furthered the crimes of obstruction of an official proceeding and conspiracy to defraud the United States"

and had to be produced. *Id.* at 41-42. The court held that the remaining 10 documents were privileged. *Id.* at 44.

Dr. Eastman continued his privilege review of the remaining documents and then, in light of the district court's reasoning in the March 28 order, withdrew his claims of privilege and produced an additional approximately 1,000 documents in May 2022. The Select Committee either did not object or withdrew its objections to all but about 1,300 documents. ECF 356 at 3-4. The district court conducted an *in camera* review of 599 of those documents in June 2022, held that approximately 450 of those were privileged and ordered production of the remainder, including a single document – which, like before, was not authored by Dr. Eastman nor copied to his client, former President Trump – that it held to be privileged but subject to a crime-fraud exception and therefore had to be produced. ECF at 21. The Select Committee then, in August 2022, renewed its request for the court's *in camera* inspection of the 576 documents over which it had held its objections to Dr. Eastman's privilege claims in "abeyance." Dr. Eastman then withdrew his claims of privilege and produced an additional 18 documents in September (4 of which were partially redacted). The district court then reviewed the "final" 562 documents *in camera*, held that all but 25 were privileged, but that 8 of the privileged documents were subject to a crime-fraud exception and had to be produced. This motion to stay pending appeal involves only those 8 documents

(though the appeal itself will challenge the district court's crime-fraud holding with respect to the two documents that have previously been produced[2]).

## REASONS FOR GRANTING A STAY PENDING APPEAL

### I. Legal Standard

Four factors govern stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). The same standard applies to district courts applying Civil Rule 62(c) as to appellate courts applying Appellate Rule 8. *Hilton*, 481 U.S. at 776

These factors are not rigid; rather they operate on a continuum. Thus, this Court has formulated two alternative tests to show a stay is warranted. The first, drawn from the injunctive relief standard, requires the moving party to show: "(1) a strong likelihood of success on the merits, [and] (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted[.]" *Golden Gate Rest. Ass'n*,

---

[2] Although the production of those two documents has likely mooted the claim of privilege itself, the district court's crime-fraud holding likely has "collateral consequences" that would not moot an appeal of that holding. *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968).

512 F.3d at 1115–16 (alterations in original) (quoting *Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007)). The second requires the moving party to "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* at 1116 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).

On this sliding scale, the more concrete the irreparable harm, the less weight is placed on possibility of success on the merits. *Id.* Conversely, "the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *Winter*, 502 F.3d at 862). Additionally, the Court must "consider 'where the public interest lies' separately from and in addition to 'whether the applicant [for stay] will be irreparably injured absent a stay[.]'" *id.* (alterations in original) (quoting *Winter*, 502 F.3d at 863 (itself quoting *Hilton*, 481 U.S. at 776)).

As discussed below, Dr. Eastman can demonstrate every element and meet both standards.

## II. All Factors Weigh in Favor of a Stay of the District Court's October 19 Order

### a. Likelihood of Success on the Merits

Appellant has submitted an affidavit, *ex parte* and under seal, in connection with this filing which provides critical context for the emails at issue. Ex. 1. We respectfully submit that in light of this context the district court's crime-fraud ruling is clearly erroneous.

7

### b. Irreparable Harm

Disclosure of privileged information is itself and irreparable injury. Once privileged communications are disclosed, that disclosure is permanent. As one court explained:

> Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993) (finding irreparable harm). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The status quo could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, . . . confidential information lose their secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever.").

8

This is why, as the D.C. Circuit recently explained, "irreparable injury is frequently found when a movant seeks to prevent the disclosure of privileged documents pending litigation. That is generally because the holders of the privileges will, themselves, be irreparably harmed by release, and time is not of the essence." *Trump v. Thompson*, 20 F.4th at 47.

### c. No Substantial Injury to the Congressional Defendants

The Committee's harm would be merely a delay in its receipt of documents. In the analogous FOIA context, an "'interest in receiving the records immediately . . . poses no threat of irreparable harm' to them"—at least not a cognizable one. *Cf. Shapiro v. U.S. Dep't of Justice*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016) (quoting *John Doe Agency v. John Doe Corp.,* 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers)). This remains true even when resolution of the merits will delay government action. *Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its action "delayed for a short period of time pending resolution of this case on the merits"); *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F. Supp. 2d 1144, 1152 (D. Minn. 2006) (delaying implementation of ordinance). In any event, a delay is an entirely different class of harm than the permanent disclosure of privileged information.

### d. Public Interest

Attorney client privilege is a public good. While the individual relationship benefits an individual client, the possibility of seeking full and frank legal advice benefits society immensely. Because the privilege "encourage[s] full and frank communication between attorneys and their clients" it "promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). To that end, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id. cf.*, *e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) (explaining that a theory of selective waiver "does little, if anything, to serve the *public good* underpinning the attorney-client privilege." (emphasis added)).

If this privilege is called into doubt, the communication between any client and among any attorneys will be called into question. Attorneys will no longer be comfortable to voice doubt at legal or factual claims (doubt which may be resolved through caveats or discussion with principles) for fear that expressing doubt will nullify the privilege. Attorneys must be free to probe the weaknesses in their own arguments without fear of voiding the privilege.

### e. A stay is Warranted Under Either Formulation of this Court's Test

As explained above, this Court has formulated two versions of the four factor test governing stays pending appeal. In so many words, this Court has held

that where the likelihood of irreparable injury is high, the likelihood of success factor gets less weight (and vice versa). As explained above, Dr. Eastman has both a likelihood of success on the merits and a severe risk of irreparable harm. A stay pending appeal is therefore warranted under either formulation of the four-factor test.

## CONCLUSION

For the foregoing reasons, Dr. Eastman respectfully requests that this Court issue a stay pending appeal of the District Court's order that he produce 8 privileged documents pursuant to its crime-fraud holding.

This the 28th day of October 2022.

                              Respectfully submitted,

                              /s/ Anthony T. Caso
                              Anthony T. Caso (Cal. Bar #88561)
                              CONSTITUTIONAL COUNSEL GROUP
                              174 W Lincoln Ave # 620
                              Anaheim, CA 92805-2901
                              Phone: 916-601-1916
                              Fax: 916-307-5164
                              Email: atcaso@ccg1776.com

                              Charles Burnham (D.C. Bar# 1003464)*
                              Email: charles@burnhamgorokhov.com
                              BURNHAM & GOROKHOV PLLC
                              1424 K Street NW, Suite 500
                              Washington, D.C. 20005
                              Telephone: (202) 386-6920
                              * *pro hac vice motion forthcoming*

# CERTIFICATE OF SERVICE

I have served this filing on all counsel via email.

                                  Respectfully submitted,

                                  /s/Anthony T. Caso
                                  Anthony T. Caso (Cal. Bar #88561)
                                  CONSTITUTIONAL COUNSEL GROUP
                                  174 W Lincoln Ave # 620
                                  Anaheim, CA 92805-2901
                                  Phone: 916-601-1916
                                  Fax: 916-307-5164
                                  Email: atcaso@ccg1776.com

EXHIBIT A