Anthony T. Caso (Cal. Bar #88561)
Email: atcaso@ccg1776.com
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164

Charles Burnham (D.C. Bar# 1003464)*
Email: charles@burnhamgorokhov.com
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
* *admitted pro hac vice*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOHN C. EASTMAN, | Case No.: 8:22-cv-00099-DOC-DFM |
| *Plaintiff*, | |
| vs. | |
| BENNIE G. THOMPSON, *et al.* | |
| *Defendants* | |

## MOTION TO RECONSIDER OR IN THE ALTERNATIVE FOR A STAY PENDING APPEAL

John Eastman, through undersigned counsel, respectfully asks this Court to reconsider it's October 19, 2022 order (ECF 372), or in the alternative to stay enforcement of the order pending appeal to the United States Circuit Court for the

Ninth Circuit, pursuant to Fed. R. Civ. P. 62(c). In support of this motion, he asserts the following:

## BACKGROUND

On October 19 this Court ordered Plaintiff to produce a number of emails pursuant to the crime fraud exception. ECF 372. Dr. Eastman respectfully submits that the relevant context shows that this ruling was clearly erroneous. For the reasons set forth below, the Court's ruling should be corrected either through reconsideration or appeal.

## ARGUMENT

**I. This Court Should Reconsider its October 19 Order**

Local Rule 7-18(c) allows for reconsideration in cases of "a manifest showing of a failure to consider material facts." In its October 19 order, this Court ordered several emails produced under the crime fraud privilege exception pursuant to a finding that "President Trump knew that the specific numbers of voter fraud [included in a federal court filing] were wrong but continued to tout those numbers, both in court and in the public." ECF 372 at 17. Dr. Eastman submits that the full email record clearly shows that the President's lawyers took great care to ensure all court filings were accurate. The Court also held that a few emails "make clear that President Trump filed certain lawsuits not to obtain legal relief, but to disrupt or delay the January 6 congressional proceedings through the courts." ECF 372 at 15. Dr. Eastman submits that the full email record

demonstrates that the legal filings were all designed to obtain a ruling from the court on the contested election challenges.

Included with this filing is an affidavit[1] which identifies specific documents previously submitted for the court's *in camera* review that explain the true import of the email record surrounding the Presidential certification submitted in connection with *Trump v. Kemp*, 511 F.Supp. 3d 1325, 1330 (N.D. Ga. 2021) and the purpose for the filing of the complaint in that case. Ex. 1. The affidavit and referenced documents clearly show that no false information was knowingly submitted by the President or his attorneys, and that the complaint was not filed for an improper purpose.

## II. In the Alternative, this Court Should Grant a Stay of the October 19 Order Pending Appeal

### a. Legal Standard

Four factors govern stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also*

---

[1] Because the affidavit includes the content of communications that this Court has held to be privileged, in is submitted *in camera*.

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). The same standard applies to district courts applying Civil Rule 62(c) as appellate courts applying Appellate Rule 8. *Hilton*, 481 U.S. at 776

These factors are not rigid, rather they operate on a continuum. Thus, the Ninth Circuit has formulated two alternative tests to show a stay is warranted. The first, drawn from the injunctive relief standard, requires the moving party to show: "(1) a strong likelihood of success on the merits, [and] (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted[.]" *Golden Gate Rest. Ass'n*, 512 F.3d at 1115–16 (alterations in original) (quoting *Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007)). The second requires the moving party to "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* at 1116 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).

On this sliding scale, the more concrete the irreparable harm, the less weight is placed on possibility of success on the merits. *Id.* Conversely, "the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *Winter*, 502 F.3d at 862). Additionally, this Court must "consider 'where the public interest lies' separately from and in addition to 'whether the applicant [for stay] will be irreparably injured absent a stay[.]'" *id.* (alterations in original) (quoting *Winter*, 502 F.3d at 863 (itself quoting *Hilton*, 481 U.S. at 776)).

As discussed below, Dr. Eastman can demonstrate every element and meet both standards.

### b. All Factors Weigh in Favor of a Stay of this Court's October 19 Order

#### i. Likelihood of Success on the Merits

As stated above, we have submitted an *in camera* affidavit in connection with this filing which provides critical context for the emails at issue. We respectfully submit that in light of this context the Court's crime-fraud ruling is clearly erroneous.

#### ii. Irreparable Harm

Disclosure of privileged information is itself and irreparable injury. Once privileged communications are disclosed, that disclosure is permanent. As one court explained:

> Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993) (finding irreparable harm). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The status quo could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see*

*PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, . . . confidential information lose their secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever."). This is why, as the D.C. Circuit recently explained, "irreparable injury is frequently found when a movant seeks to prevent the disclosure of privileged documents pending litigation. That is generally because the holders of the privileges will, themselves, be irreparably harmed by release, and time is not of the essence." *Trump v. Thompson*, 20 F.4th at 47.

### iii. No Substantial Injury to the Congressional Defendants

The Committee's harm would be merely a delay in its receipt of documents. In the analogous FOIA context, an " 'interest in receiving the records immediately . . . poses no threat of irreparable harm' to them"—at least not a cognizable one. *Cf. Shapiro v. U.S. Dep't of Justice*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016) (quoting *John Doe Agency v. John Doe Corp.,* 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers)). This remains true even when resolution of the merits will delay government action. *Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its action "delayed for a short period of time pending resolution of this case on the merits"); *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F. Supp. 2d 1144, 1152 (D. Minn. 2006) (delaying implementation of ordinance). In any event, a delay is an

entirely different class of harm than the permanent disclosure of privileged information.

### iv. Public Interest

Attorney client privilege is a public good. While the individual relationship benefits an individual client, the possibility of seeking full and frank legal advice benefits society immensely. Because the privilege "encourage[s] full and frank communication between attorneys and their clients" it "promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). To that end, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id. cf.*, *e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) (explaining that a theory of selective waiver "does little, if anything, to serve the *public good* underpinning the attorney-client privilege." (emphasis added)).

If this privilege is called into doubt, the communication between any client and among any attorneys will be called into question. Attorneys will no longer be comfortable to voice doubt at legal or factual claims (doubt which may be resolved through caveats or discussion with principles) for fear that expressing doubt will nullify the privilege. Attorneys must be free to probe the weaknesses in their own arguments without fear of voiding the privilege.

### c. A stay is Warranted Under Either Formulation of the Ninth Circuit's Test

As explained above, the Ninth Circuit has formulated two versions of the four factor test governing stays pending appeal. In so many words, the Ninth Circuit has held that where the likelihood of irreparable injury is high, the likelihood of success factor gets less weight (and vice versa). As explained above, Plaintiff has both a likelihood of success on the merits and a severe risk of irreparable harm. A stay pending appeal is therefore warranted under either formulation of the four-factor test.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reconsider the crime fraud findings in its October 19 order. In the alternative, Dr. Eastman respectfully requests that this Court stay its October 19, 2022 Order (ECF 372) and Order Dr. Eastman to file his appeal by a date certain.

Respectfully submitted,

/s/ Charles Burnham

Charles Burnham (D.C. Bar# 1003464)*
Email: charles@burnhamgorokhov.com
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
* *admitted pro hac vice*

# CERTIFICATE OF SERVICE

I have served this filing on all counsel through the Court's ECF system.

                Respectfully submitted,

                /s/Anthony T. Caso
                Anthony T. Caso (Cal. Bar #88561)
                CONSTITUTIONAL COUNSEL GROUP
                174 W Lincoln Ave # 620
                Anaheim, CA 92805-2901
                Phone: 916-601-1916
                Fax: 916-307-5164
                Email: atcaso@ccg1776.com

                Charles Burnham
                (D.C. Bar# 1003464)*
                Email: charles@burnhamgorokhov.com
                BURNHAM & GOROKHOV PLLC
                1424 K Street NW, Suite 500
                Washington, D.C. 20005
                Telephone: (202) 386-6920
                * *admitted pro hac vice*