UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN C. EASTMAN,<br><br>　　Plaintiff,<br><br>vs.<br><br>BENNIE G. THOMPSON, SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6 ATTACK ON THE US CAPITOL, AND CHAPMAN UNIVERSITY,<br><br>　　Defendants. | Case No. 8:22-cv-00099-DOC-DFM<br><br><br>ORDER RE PRIVILEGE OF REMAINING DOCUMENTS |

# Table of Contents

I. BACKGROUND ..... 3

II. LEGAL STANDARD ..... 5

III. DISCUSSION ..... 5

    A.    Work Product ..... 6

        1.    Anticipation of litigation ..... 6

            a.    Draft filings related to ongoing suits ..... 6

            b.    Electoral Count Act plan ..... 7

            c.    State election-related documents ..... 8

            d.    Connecting third parties ..... 9

            e.    Public documents ..... 9

        2.    Preparation by or for a client's representative ..... 9

        3.    Waiver of protection ..... 10

        4.    Substantial or compelling need exception ..... 11

    B.    Attorney-Client Privilege ..... 12

        1.    Clients seeking legal advice from attorneys ..... 12

        2.    Confidentiality ..... 13

    C.    Crime-fraud exception ..... 13

        1.    Emails related to and in furtherance of delaying or disrupting the January 6 congressional proceedings ..... 15

        2.    Emails related to and in furtherance of the conspiracy to defraud ..... 16

IV. DISPOSITION ..... 18

Plaintiff Dr. John Eastman ("Dr. Eastman"), a former law school dean at Chapman University ("Chapman"), is a "political conservative who supported former President [Donald] Trump" and a self-described "activist law professor."[1] While he was a professor at Chapman, Dr. Eastman worked with President Trump and his campaign on legal and political strategy regarding the November 3, 2020 election.

This case concerns the House of Representatives Select Committee to Investigate the January 6 Attack on the US Capitol's ("Select Committee") attempt to obtain Dr. Eastman's emails from his Chapman email account between November 3, 2020 and January 20, 2021. The parties disagree on whether those documents are privileged and thus protected from disclosure.

## I. BACKGROUND

The Court previously conducted two reviews to determine whether Dr. Eastman's privilege assertions apply to the records subpoenaed by the Select Committee. In its First Order, the Court extensively detailed the events of January 6, 2021, and Dr. Eastman and President Trump's actions leading up to and on that day.[2] The Court also held that President Trump and Dr. Eastman more likely than not committed obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.

The Court has now conducted an in camera review of every document disputed by the parties, weighed and considered all evidence presented by the parties, and applied the appropriate standard of proof.

The Court proceeds by discussing the case's procedural history, before determining whether Dr. Eastman's assertions of work product privilege and attorney-client privilege apply. Finding that most documents fall within work product privilege or attorney-client privilege, the Court then analyzes whether disclosure is still warranted under the crime-fraud

---

[1] Complaint (Dkt. 1) ¶¶ 5–6.

[2] Order Re: Privilege of Documents Dated January 4-7, 2021 ("First Order") (Dkt. 260).

-3-

exception. The Court concludes that the crime-fraud exception applies to a number of emails related to President Trump and Dr. Eastman's (1) court efforts to delay or disrupt the January 6 vote; and (2) their knowing misrepresentation of voter fraud numbers in Georgia when seeking to overturn the election results in federal court.

Dr. Eastman filed this action on January 20, 2021, to prevent Chapman University from complying with the Select Committee's subpoena. After briefing from the parties and a hearing, the Court denied Dr. Eastman's application for a preliminary injunction (Dkt. 41). The Court ordered Dr. Eastman to begin reviewing the documents and producing a privilege log to the Court and the Select Committee (Dkt. 43).

During a hearing on January 31, the Court granted the Select Committee's request that Dr. Eastman begin his production with documents dated January 4-7, 2021 (Dkt. 63). On March 28, 2022, after briefing and a hearing, the Court ordered Dr. Eastman to disclose 101 of those 111 documents to the Select Committee. First Order at 44. Pursuant to the Court's order, Dr. Eastman produced the 101 documents in the first week of April 2022 (Dkt. 286).

Dr. Eastman completed his privilege review of the remaining documents on April 19, 2022, and the parties then cooperated to reduce their privilege claims and objections. On May 2, 2022, Dr. Eastman produced a consolidated privilege log identifying over 2000 documents over which he claimed privilege (Dkt. 336). The Select Committee dropped many objections but reserved the right to renew objections to 576 documents on a later date. *Id.* After the parties' cooperation, the Select Committee maintained its objections to 599 documents. On June 7, 2022, the Court ordered Dr. Eastman to disclose 159 of the 599 documents in review ("Second Order") (Dkt. 356).

On September 14, 2022, the Select Committee renewed its objections to the 576 documents and asked the Court to review them (Dkt. 366). The Select Committee proposed an expedited briefing schedule that this Court promptly adopted. The parties again cooperated to reduce their privilege claims and objections, and the Select Committee ultimately maintained its objections to 562 documents. After receiving the final list of disputed

documents, the Court immediately began reviewing the documents while the parties submitted briefing on their claims. Dr. Eastman filed his brief on September 26, 2022 (Dkt. 369). The Select Committee responded on October 3, 2022 (Dkt. 370), and Dr. Eastman replied on October 5, 2022 (Dkt. 371).

## II.   LEGAL STANDARD

Federal common law governs the attorney-client privilege when courts adjudicate issues of federal law.[3] "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."[4] The "party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication."[5] The party must assert the privilege "as to each record sought to allow the court to rule with specificity."[6] "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[7] The same burden applies to the party asserting work product protection.[8]

## III.   DISCUSSION

The Court will first consider work product protection, then attorney-client privilege. For documents where Dr. Eastman claims both work product and attorney client privilege, the Court will only address attorney-client privilege if it finds that work product protection does not apply. The Court draws substantially on its reasoning from its prior orders which addressed many of the same legal and factual issues.[9]

Dr. Eastman claims that 561 of the 562 documents are protected work product. Dr. Eastman also claims that 54 of the documents that are allegedly protected work product are

---

[3] *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).
[4] *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (citations omitted).
[5] *Ruehle*, 583 F.3d at 607 (citation omitted) (emphasis in original).
[6] *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).
[7] *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).
[8] *See Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010).
[9] *See* First Order; Second Order.

also protected under the attorney-client privilege. Finally, Dr. Eastman claims attorney-client privilege for only one document over which he does not also assert work product privilege.

### A. Work Product

The Court first turns to the 561 documents that Dr. Eastman claims are protected work product. Documents are protected work product if they are (1) "'prepared in anticipation of litigation or for trial,'" and (2) "prepared 'by or for another party or by or for that other party's representative.'"[10] The Court considers each requirement in turn.

#### 1. Anticipation of litigation

Documents qualify for work product protection if they were "prepared in anticipation of litigation or for trial."[11] Where some litigation documents are also prepared for a second, non-litigation purpose, they are protected if they were "created *because of* anticipated litigation and would not have been created in substantially similar form *but for* the prospect of that litigation."[12]

The Court groups its anticipation of litigation analysis of the remaining documents into five categories: ongoing suits, the Electoral Act plan, state elections, connecting third parties, and news articles.

#### a. Draft filings related to ongoing suits

486 of the 561 documents relate to ongoing litigation in state or federal court.[13] These documents, in part: seek or send legal research for case filings; make recommendations or

---

[10] *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir. 1989) (quoting Fed. R. Civ. P. 26(b)(3)).

[11] Fed. R. Civ. P. 26(b)(3).

[12] *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)* ("*Torf*"), 357 F.3d 900, 908 (9th Cir. 2003) (internal quotation omitted) (emphasis added).

[13] 6777; 6876; 6962; 6963; 7032; 7098; 7182; 7252; 7745; 7768; 8085; 8247; 10067; 16033; 18474; 18501; 21761; 21932; 22453; 23053; 23742; 24935; 24952; 25122; 25224; 28556; 29234; 29239; 29249; 29353; 29358; 29368; 29398; 29403; 29413; 31731; 31735; 31737; 31742; 31746; 31869; 31872; 31878; 31882; 31885; 31888; 31890; 31907; 31925; 31928; 31932; 31941; 31948; 31952; 31958; 31961; 31971; 31975; 31979; 32000; 32007; 32017; 32022; 32028; 32038; 32043; 32047; 32050; 32056; 32073; 32101; 32117; 32158; 32166; 32231; 32237; 32242; 32327; 32347; 32354; 32368; 32428; 32759; 32799; 32838; 32846; 32895; 32904; 32931; 32940; 32958; 33376; 33383; 33389; 33400; 33407; 33435; 33456; 33543; 33551; 33584; 33593; 33611; 33619; 33667; 33678; 33693; 33780; 33788; 33796; 33832; 33840; 33875; 33885; 33894; 33920; 33942; 33984; 34080; 34089; 34107; 34116; 34445; 34454; 34471; 34489; 34499; 34506; 34516; 34535; 34554; 34565; 34961; 34971; 35153; 35163; 35172; 35241; 35251; 35283; 35335; 35346; 35378; 35385; 35391; 35467; 35539; 35561; 35567; 35619; 35624; 35629; 35636; 35639; 35650; 35651; 38211; 38217; 38227; 38232; 47447; 47449; 48040; 48464; 48472; 48473; 48503; 48509; 48525; 49061; 49519; 49522; 49531; 49593; 49594; 49615; 49666;

edits to court filings; or discuss litigation strategy for ongoing cases. All of these 492 documents were clearly prepared in anticipation of litigation.

Two of the 561 documents are duplicate files of documents the Court previously ordered to be disclosed.[14] Accordingly, the Court ORDERS these two documents to be disclosed.

### b. Electoral Count Act plan

Five of the 561 documents relate to Dr. Eastman's proposal for vice President Pence to reject or delay counting electoral votes on January 6, 2021.[15] As discussed in the Court's prior Order, to the extent the plan was intended "to proceed without judicial involvement," emails pertaining to the plan were not made in anticipation of litigation.[16]

All five of these emails discuss in part actions to support the plan to disrupt the Joint Session. Some portions of these emails do discuss litigation strategy, and to that extent, they are created in anticipation of litigation. However, for other portions, "[t]he true animating force behind these emails was advancing a political strategy: to persuade Vice President Pence to take unilateral action on January 6."[17] These portions of the documents were not

---

49667; 49672; 49678; 49688; 49693; 49712; 49718; 49721; 50002; 50117; 50224; 50330; 50332; 50446; 50449; 51079; 51173; 51293; 51296; 51307; 51325; 51328; 51394; 51397; 51412; 51419; 51425; 51441; 51764; 52486; 52759; 52951; 52953; 52978; 53489; 53495; 53539; 53541; 53562; 53823; 53829; 54423; 54437; 54444; 54452; 54816; 54962; 54976; 54977; 54979; 54981; 54983; 54986; 55015; 55017; 55026; 55034; 55038; 55042; 55044; 55046; 55107; 55117; 55123; 55133; 55138; 55157; 55158; 55159; 55390; 55394; 55400; 55426; 55490; 55494; 55531; 55537; 55550; 55555; 55559; 55566; 55594; 55601; 55659; 55662; 55663; 55669; 55681; 55693; 55699; 56068; 56073; 56079; 56082; 56085; 56088; 56091; 56095; 56098; 56101; 56104; 56111; 56438; 56440; 56442; 56445; 56451; 56542; 56625; 56692; 56702; 56730; 56731; 56732; 56733; 56735; 56736; 56737; 56738; 56742; 56747; 56748; 56943; 56944; 56981; 56983; 56984; 56992; 56998; 57001; 57003; 57004; 57006; 57203; 57409; 57416; 57419; 57435; 57440; 57443; 57868; 57877; 57911; 57915; 57921; 57925; 57929; 57933; 57937; 57942; 57946; 57950; 57954; 57957; 58452; 58708; 58717; 58727; 58751; 58755; 58777; 59043; 59064; 59073; 59087; 59101; 59125; 59132; 59163; 59171; 59178; 59216; 59229; 59237; 59246; 59260; 59266; 59279; 59297; 59306; 59355; 59390; 59430; 59436; 59444; 59447; 59482; 59508; 59512; 59603; 59637; 59639; 59640; 59643; 59649; 59653; 59655; 59656; 59682; 59689; 59694; 59697; 59702; 59705; 59709; 59716; 59732; 59751; 59757; 59761; 59764; 59767; 59768; 59770; 59792; 59793; 59806; 59809; 59812; 59817; 59821; 59829; 59839; 59849; 59861; 59881; 59888; 59938; 59954; 59996; 60004; 60023; 60042; 60051; 60052; 60057; 60077; 60081; 60089; 60105; 60133; 60171; 60209; 60217; 60225; 60235; 60243; 60251; 60260; 60276; 60287; 60315; 60317; 60365; 60569; 60590; 60599; 60635; 60647; 60658; 60669; 60678; 60721; 60732; 60742; 60743; 60745; 60797; 60831; 60839; 60848; 60851; 60861; 60872; 60877; 60903; 60914; 60925; 60939; 60950; 60961; 60975; 60986; 60998; 61010; 61022; 61037; 61052; 61108; 61124; 61216; 61229; 61237; 61248; 61272; 61284; 61297; 61321; 61332; 61344; 61385; 61493; 61505; 61532; 61544; 61568; 61684; 61762; 62729.

[14] 59765; 59766.

[15] 55146; 55949; 59680; 61774; 61778.

[16] First Order at 23.

[17] *Id.* at 24.

-7-

created in anticipation of litigation, so they are not protected work product. Because Dr. Eastman also claims attorney-client privilege for one of these documents, however, the Court will address it in the attorney-client privilege analysis below.[18] The Court ORDERS portions of the other four documents to be disclosed.[19]

### c. State election-related documents

Dr. Eastman claims work product protection over 52 documents relating to alleged fraud in state elections.[20] The Court discusses them in turn.

Thirty-five are emails between various attorneys discussing statistical data in the context of state election litigation.[21] These emails would not have been made in the same form if not for litigation and are thus prepared in anticipation of litigation. Similarly, two of these 52 documents relate to potential press releases.[22] These emails reference litigation and would not have been made in the same form if not for litigation and are thus prepared in anticipation of litigation.

Twelve are documents discussing reactions to various state filings.[23] These are not prepared in anticipation of litigation and are thus not protected work product. Because Dr. Eastman also claims attorney-client privilege for these documents, however, the Court will address them in the attorney-client privilege analysis below.

Three documents are not created in anticipation of litigation, and Dr. Eastman does not

---

[18] 55146.

[19] For document 55950, the email dated December 22, 2020 at 7:42 PM is not work product. For document 59680, the first email dated December 30, 2020 at 5:54 PM MST is not work product. For document 61774, the first sentence of the email dated January 1, 2021 at 2:14 PM MST is work product, but the rest of the email is not work product; the email dated January 1 at 3:29 PM is not work product. Document 61778 contains the same emails as 61744, which are not work product; additionally, the email dated January 1, 2021 at 2:22 PM MST is not work product. The email headers associated with these emails are also not work product. Dr. Eastman is responsible for redacting the remaining portions of these documents.

[20] 6731; 6733; 6744; 6745; 6746; 6748; 6751; 6752; 6753; 6755; 6759; 6764; 6780; 7779; 7786; 7936; 7945; 8101; 8393; 8568; 8704; 8706; 8717; 8730; 8731; 8732; 8733; 8735; 15004; 15243; 15366; 16635; 17644; 19886; 20140; 22680; 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 30685; 30688; 32062; 32068; 57412; 57422.

[21] 6731; 6733; 6744; 6745; 6746; 6748; 6751; 6752; 6753; 6755; 6759; 6764; 6780; 7779; 7786; 7936; 7945; 8101; 8393; 8568; 8704; 8706; 8731; 8732; 8733; 8735; 15004; 15243; 15366; 16635; 17644; 19886; 20140; 30685; 30688.

[22] 57412; 57422.

[23] 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068.

-8-

claim attorney-client privilege over them.[24] Two of these documents are emails between Eastman and non-attorney consultants and discuss statistical data with no mention of state election litigation.[25] The remaining document is a report on alleged election irregularities, which the Court finds would "have been created in substantially similar form" without the prospect of litigation.[26]

Accordingly, the Court ORDERS the above three documents to be disclosed.[27]

### d. Connecting third parties

Four documents connect third parties to Dr. Eastman.[28] Similar documents were discussed in the First Order, none of which were found to relate to or implicate litigation. Accordingly, these four documents are not protected and the Court ORDERS them to be disclosed.

### e. Public documents

Eleven documents share news articles or other public documents.[29] These public articles and posts were not created for litigation, and the minimal commentary contained in the emails is unrelated to litigation. As such, these eleven documents are not work product.

Accordingly, the Court ORDERS these eleven documents to be disclosed.

### 2. Preparation by or for a client's representative

Having found that 524 of the 561 documents were created in anticipation of litigation, the Court turns to the next prong of the work product doctrine and examines whether these documents were created by or for a party or "party's representative (including the other party's attorney, consultant, . . . or agent)."[30] Documents are protected if they were prepared by or for President Trump or another client, or by or for Dr. Eastman or another

---

[24] 8717; 8730; 22680.
[25] 8717; 8730. Further, Dr. Eastman does not meaningfully respond to the Select Committee's objections to a number of documents, including 8717 and 8730. *See* Privilege Log, 8717, 8730.
[26] 22680.
[27] 8717; 8730; 22680.
[28] 6757; 16628; 16634; 20973.
[29] 15667; 32172; 32181; 32183; 32189; 32200; 32208; 32215; 32806; 32821; 33701.
[30] Fed. R. Civ. P. 26(b)(3); *see United States v. Nobles*, 422 U.S. 225, 238 (1975).

-9-

representative of those clients.[31]

Of the 524 documents, 503 relate to representing President Trump or his campaign. All 503 documents were prepared or sent by or for members of the White House and campaign staff, attorneys of record in court cases (including Dr. Eastman), and those attorneys' staff. Because these documents were created by or for agents of President Trump or his campaign, they are work product.

The remaining 21 documents are legal memoranda prepared by third parties unrelated to the Trump campaign.[32] Dr. Eastman argues that these documents are substantive attachments to emails previously held to be protected work product.[33] Although these legal memoranda appear to be unsolicited, they were created for Dr. Eastman and Trump's legal team, who may have considered these legal memoranda in litigation filings. As such, these 21 documents are also work product.

### 3. Waiver of protection

The Court now considers whether Dr. Eastman waived his privilege over any of the 524 documents that the Court concluded constitute protected work product. Unlike attorney-client privilege, which is waived if not kept completely confidential, work product protection is only waived when attorneys disclose their work to "an adversary or a conduit to an adversary in litigation."[34]

As the Court previously ruled, Dr. Eastman's use of his Chapman University email address did not destroy Dr. Eastman's privilege over his communications.[35]

Dr. Eastman did not disclose any of the 524 documents to a conduit to an adversary in litigation. The documents were all exchanged between members of President Trump's

---

[31] Below, the Court expands upon its reasoning in the prior Order and finds that Dr. Eastman and President Trump and his campaign had an established attorney-client relationship during entire the period of the subpoena. Thus, Dr. Eastman is a representative of President Trump and his campaign for purposes of the work product doctrine.

[32] 29234; 29239; 29249; 29353; 29358; 29368; 29398; 29403; 29413; 32022; 32028; 32038; 32043; 38211; 38217; 38227; 38232; 49672; 49678; 49688; 49693.

[33] Privilege Log (Dkt. 36).

[34] *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020); *Nobles*, 422 U.S. at 239.

[35] First Order at 17-20, 29-30.

-10-

campaign and its litigation teams; President Trump's staff; and likeminded experts, consultants, and volunteers. Moreover, many of the documents were labeled confidential or "attorney work product," reinforcing Dr. Eastman's assertion that his team did not intend for these documents to be disclosed to adversaries.

### 4. Substantial or compelling need exception

The Court finds that all 524 protected documents are 'opinion' work product because they include attorneys' thoughts and legal theories. Opinion work product "is virtually undiscoverable."[36] A court may compel disclosure of opinion work product only in the rare situation "when mental impressions are *the pivotal issue* in the current litigation and the need for the material is compelling."[37]

As the Court previously found, review of the 524 protected documents shows that none are "pivotal" to the Select Committee's investigation. The majority of the documents include opinions and discussions about trial strategy in ongoing or anticipated lawsuits. As discussed above, this litigation was a "legitimate form of recourse, and is not tied to the investigation's core purpose, which is to 'investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol.'"[38] Accordingly, none of these 524 shall be disclosed based on compelling need.

\* \* \*

Having evaluated each element of work product protection, the Court finds that 524 documents are protected work product and 37 documents are not protected work product. Dr. Eastman also claims attorney client privilege over 13 of the 37 documents that are not protected work product,[39] so the Court will determine disclosure for these documents under attorney-client privilege below. Thus, the Court ORDERS the other 24 documents to be

---

[36] *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010)); Fed. R. Civ. P. 26(b)(3)(B).

[37] *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis added); *see also Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981) (noting that opinion work product is discoverable only upon "a far stronger showing of necessity and unavailability by other means").

[38] First Order at 43 (quoting H.R. Res. 503 § 3).

[39] 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068; 55146.

disclosed.[40]

### B. Attorney-Client Privilege

The Court now moves from work product protection to Dr. Eastman's claims of attorney-client privilege. The attorney-client privilege protects confidential communications between attorneys and clients for the purpose of legal advice.[41] However, "advice on political, strategic, or policy issues" is not protected.[42] The privilege extends to communications with agents of the clients and third parties assisting the attorney.[43]

Dr. Eastman claims attorney-client privilege over 55 documents. The Court found above that most of these documents are protected work product. The Court here considers the remaining 14 documents.[44]

#### 1. Clients seeking legal advice from attorneys

Below, the Court considers whether an attorney-client relationship existed and whether the client was seeking legal advice when communicating with their attorney.

The Court previously found that Dr. Eastman had an attorney-client relationship with President Trump throughout the subpoena's time period.[45] One of the 14 documents involves discussions between a Trump representative and Dr. Eastman.[46] These discussions primarily seek legal advice, but some portions only discuss political advice. Accordingly, the Court ORDERS this document to be disclosed with redactions.[47]

---

[40] 6757; 8717; 8730; 15667; 16628; 16634; 20973; 22680; 32172; 32181; 32183; 32189; 32200; 32208; 32215; 32806; 32821; 33701; 55949; 59680; 59765; 59766; 61774; 61778.

[41] *Upjohn*, 449 U.S. at 389; *see also United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

[42] *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998).

[43] *See Sanmina*, 968 F.3d at 1116 (internal citations omitted). In some instances, the Ninth Circuit has found communications between an attorney and their associates privileged. *See United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996).

[44] These 14 documents include the 13 discussed in the work product section, as well as 26919, which was only claimed to be attorney-client privileged: 26919; 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068; 55146.

[45] Second Order at 14.

[46] 55146.

[47] 55146: the first two paragraphs of the email dated December 24, 2020, at 11:16 AM and its associated email header shall be disclosed. Dr. Eastman is responsible for redacting the remaining portions of this document.

For 12 of the 14 documents, Dr. Eastman is the potential client.[48] In these emails, Dr. Eastman discusses with another attorney the possible grounds of a lawsuit. These documents explicitly seek legal advice and representation.

One of the 14 documents involves potential representation of a state legislator.[49] The email is solely between the potential client and Dr. Eastman and also explicitly seeks legal advice.

### 2. Confidentiality

In order for the above 13 communications to be privileged,[50] they must also have been kept confidential.[51] The presence of a third party does not necessarily destroy confidentiality if that third party is an agent of the client or attorney.[52] But the third party's "shared desire to see the same outcome in a legal matter is insufficient" to maintain confidentiality.[53]

All 13 of these documents are solely between the client or potential client, and confirmed counsel.[54] Accordingly, these 13 documents are protected.

\* \* \*

Having evaluated each element of attorney-client privilege, the Court finds that 13 of the 14 documents are privileged.[55] The remaining document is ORDERED to be disclosed with redactions.[56]

### C. Crime-fraud exception

Having determined that 26 documents are unprotected, the Court has found that 536 documents are protected either by work product or attorney-client privilege. The Court now considers whether any of the remaining 536 documents should be disclosed under the crime-

---

[48] 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068.
[49] 26919.
[50] 26919; 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068.
[51] *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012); *see also Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) ("there is no confidentiality where a third party . . . either receives or generates the documents").
[52] *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978); *Richey*, 632 F.3d at 566.
[53] *In re Pac. Pictures Corp.*, 679 F.3d at 1129.
[54] 23582; 23584; 23631; 24730; 25035; 62776; 64305; 64331; 64715.
[55] 26919; 28123; 28127; 28144; 28155; 28161; 28166; 28301; 28336; 28355; 28359; 32062; 32068.
[56] *See supra* note 47.

fraud exception.

The crime-fraud exception applies when (1) a "client consults an attorney for advice that will serve [them] in the commission of a fraud or crime,"[57] and (2) the communications are "sufficiently related to" and were made "in furtherance of" the crime.[58] It is irrelevant whether the scheme was ultimately successful.[59] An attorney's wrongdoing alone may pierce the privilege, regardless of the client's awareness or innocence.[60] The exception, which extinguishes both the attorney-client privilege and the work product doctrine,[61] applies "only to documents and communications that were themselves in furtherance of illegal or fraudulent conduct."[62]

As to the first prong of the crime fraud exception, the Court has previously determined that President Trump was more likely than not engaged in or planning an obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, when he sought the advice of Dr. Eastman.[63] The Court now turns to the second prong of the exception to determine whether any of the 536 emails were "sufficiently related to" and made "in furtherance of" the obstruction and conspiracy crimes.[64] In this last batch of documents, the Court finds that the crime-fraud exception applies to eight communications.

---

[57] *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016).
[58] *In re Grand Jury Proc. (Corp.)*, 87 F.3d 377, 381–83 (9th Cir. 1996).
[59] *Id.* at 382.
[60] *See In re Sealed Case*, 107 F.3d 46, 49 n.2 (D.C. Cir. 1997) (recognizing a "the attorney's fraudulent or criminal intent defeats a claim of privilege even if the client is innocent"); *In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213 (3d Cir. 1989) ("We cannot agree" that "the crime-fraud exception does not apply to defeat the client's privilege where the pertinent alleged criminality is solely that of the law firm").
[61] *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) ("Every court of appeals that has addressed the crime-fraud exception's application to work product has concluded that it does apply."); *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir. 1982) ("where so-called work-product is in aid of a criminal scheme, fear of disclosure may serve a useful deterrent purpose and be the kind of rare occasion on which an attorney's mental processes are not immune."); *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015) ("[C]onduct by an attorney that is merely unethical, as opposed to illegal, may be enough to vitiate the work product doctrine.").
[62] *In re Grand Jury Investigation*, 231 Fed. Appx. 692 (9th Cir. 2007).
[63] *See* First Order at 31–40; Second Order at 20.
[64] *In re Grand Jury Proc. (Corp.)*, 87 F.3d 377, 381–83 (9th Cir. 1996).

### 1. Emails related to and in furtherance of delaying or disrupting the January 6 congressional proceedings

The Court's prior orders addressed several email threads related to ongoing or prospective litigation in key battleground states. In the current review, the Court finds 18 similar documents that present a close call.[65] Some emails discuss legitimate litigation strategy: how the electoral votes affect the Campaign's "legal options"; how the litigation (if successful) might overturn the election results; and how to frame cases for the Supreme Court. Others discuss how the litigation served other goals, like providing support to state electors trying to decertify electoral votes or persuading the public to question the integrity of the election. Although these emails are "sufficiently related" to disrupting the January 6 vote, on balance, the Court cannot conclusively determine that these emails furthered the obstruction of the January 6 proceedings. Accordingly, the crime-fraud exception does not apply.

There are four documents,[66] however, in which Dr. Eastman and other attorneys suggest that—irrespective of the merits—the primary goal of filing is to delay or otherwise disrupt the January 6 vote. In one email,[67] for example, President Trump's attorneys state that "[m]erely having this case pending in the Supreme Court, not ruled on, might be enough to delay consideration of Georgia." This email, read in context with other documents in this review, make clear that President Trump filed certain lawsuits not to obtain legal relief, but to disrupt or delay the January 6 congressional proceedings through the courts. The Court finds that these four documents are sufficiently related to *and* in furtherance of the obstruction

---

[65] 48464, 48503, 48509, 49594, 55046, 55123, 55133, 55146, 59680, 57957, 55949, 55426, 55490, 61762, 60081, 55494, 55537, 55550.

[66] 55697, 59954, 55146, 60023.

[67] The Court previously determined in a "close call" that this email, along with one other, did not fall within the crime-fraud exception. In so doing, the Court preserved the sanctity of attorney-client privilege, noting that "pursuing legal recourse itself did not advance any crimes." Second Order at 21. The additional context now before the Court, particularly with respect to Georgia, confirms that those emails fall within the ambit of the crime-fraud exception.

crime. Accordingly, the crime-fraud exception applies, and the Court ORDERS Dr. Eastman to disclose the four documents.[68]

### 2. Emails related to and in furtherance of the conspiracy to defraud

Four emails demonstrate an effort by President Trump and his attorneys to press false claims in federal court for the purpose of delaying the January 6 vote. The evidence confirms that this effort was undertaken in at least one lawsuit filed in Georgia.

On December 4, 2020, President Trump and his attorneys alleged in a Georgia state court action that Fulton County improperly counted a number of votes including 10,315 deceased people, 2,560 felons, and 2,423 unregistered voters.[69] President Trump and his attorneys then decided to contest the state court proceeding in federal court,[70] and discussed incorporating by reference the voter fraud numbers alleged in the state petition. On December 30, 2020, Dr. Eastman relayed "concerns" from President Trump's team "about including specific numbers in the paragraph dealing with felons, deceased, moved, etc."[71] The attorneys continued to discuss the President's resistance to signing "when specific numbers were included."[72] As Dr. Eastman explained the next day:

> Although the President signed a verification for [the state court filing] back on Dec. 1, he has since been made aware that some of the allegations (and evidence

---

[68] 55697, 59954, 55146, 60023. For document 55697, only the email sent Saturday, December 26, 2020 4:57 PM MST requires disclosure. For document 59954, only the email sent on Thursday, December 31, 2020 7:35 AM and email sent on Thursday, December 31, 2020 9:45 AM require disclosure. For document 55146, only the email sent on Thursday, December 24, 2020 7:41 AM requires disclosure. For document 60023, only the email sent on Thursday, December 31, 2020 9:55 AM requires disclosure.

[69] As discussed in the previous orders, President Trump's own U.S. Attorney General said that his investigators found no evidence of fraud on a scale that would have changed the outcome of the election, but President Trump and his attorneys continued to file dozens of lawsuits in states he lost, seeking to overturn the results. First Order at 5. By early January, more than sixty court cases alleging fraud had been dismissed for lack of evidence or lack of standing. *Id.* at 6. *See also* J. M. Luttig et al., *Lost, Not Stolen: The Conservative Case that Trump Lost and Biden Won the 2020 Presidential Election* (July 2022) (examining every count of every case of election irregularities brought by President Trump's team in six battleground states and concluding that "Donald Trump and his supporters had their day in court and failed to produce substantive evidence to make their case"), https://perma.cc/MKC4-BV3Q.

[70] *See Trump v. Kemp*, 511 F. Supp. 3d 1325, 1330 (N.D. Ga. 2021) ("Plaintiff's motion for expedited declaratory and injunctive relief asks this Court to take the unprecedented action of decertifying the results of the presidential election in Georgia and directing the Georgia General Assembly to appoint presidential electors.").

[71] 59643.

[72] 59390.

> proffered by the experts) has been inaccurate. For him to sign a new verification with that knowledge (and incorporation by reference) would not be accurate.[73]

President Trump and his attorneys ultimately filed the complaint with the same inaccurate numbers without rectifying, clarifying, or otherwise changing them.[74] President Trump, moreover, signed a verification swearing under oath that the incorporated, inaccurate numbers "are true and correct" or "believed to be true and correct" to the best of his knowledge and belief.[75]

The emails show that President Trump knew that the specific numbers of voter fraud were wrong but continued to tout those numbers, both in court and to the public. The Court finds that these emails are sufficiently related to and in furtherance of a conspiracy to defraud the United States.

Accordingly, the Court ORDERS Dr. Eastman to disclose these four communications to the Select Committee.[76]

---

[73] 60742.

[74] *See generally* Model Rules of Pro. Conduct r. 3.3 cmt. 5 (Am. Bar Ass'n 1983) (noting that the duty requiring "that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes" is "premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence"), https://perma.cc/3PB5-CGRM; *see also Christensen*, 828 F.3d at 805 ("[C]onduct by an attorney that is merely unethical, as opposed to illegal, may be enough to vitiate the work product doctrine.").

[75] In an attempt to disclaim his responsibility over the misleading allegations, President Trump's attorneys remove the numbers from the body of complaint (but nonetheless incorporate them by reference) and add a footnote that states President Trump is only relying on information that was provided to him. *See* 61108. But, by his attorneys' own admissions, the information provided to him was that the alleged voter fraud numbers were inaccurate. *See* 60742.

[76] 59643; 59390; 60742; 61108. For document 59643, only the first page (Chapman059643) requires disclosure. For document 60742, Dr. Eastman may redact emails sent before Thursday, December 31, 2020 12:00 PM MST. For document 61108, Dr. Eastman may redact emails sent before Thursday, December 31, 2020 7:43 AM.

## IV. DISPOSITION

For the reasons explained above, the Court **ORDERS** Dr. Eastman to disclose the 33 documents[77] to the House Select Committee by 2:00 pm Pacific on October 28, 2022.[78]

DATED: October 19, 2022

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

---

[77] *See supra* notes 40, 47, 68, 76.

[78] It is Dr. Eastman's responsibility to redact protected emails when they appear in otherwise-disclosed documents.

-18-