No. 22-56013

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JOHN C. EASTMAN,

*Plaintiff-Appellant*,

v.

BENNIE G. THOMPSON, et al.

*Defendants-Appellees*.

On Appeal from a Final Order of the U.S. District Court for the Central District of
California (No. 8:22-cv-00099) (Hon. David O. Carter, U.S. District Judge)

**DEFENDANTS-APPELLEES' OPPOSITION
TO PLAINTIFF-APPELLANT'S
MOTION TO STAY PENDING APPEAL**

DOUGLAS N. LETTER
*General Counsel*
TODD B. TATELMAN
*Principal Deputy General Counsel*
ERIC R. COLUMBUS
*Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov


*Counsel for the Congressional Defendants-Appellees*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

FACTUAL BACKGROUND................................................................2

PROCEDURAL HISTORY................................................................4

STANDARD ...................................................................................11

ARGUMENT ..................................................................................13

    I.    Dr. Eastman Cannot Establish a "Serious Legal Question" on Appeal......................................................................................13

    II.    Dr. Eastman Has Not Established Irreparable Harm ...........................17

    III.    The Balance of Equities and Public Interest Favor the Select Committee ................................................................................18

CONCLUSION ...............................................................................20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .............................................................................12

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995)................................................................14, 15, 16

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) ...............................................................................11

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) .............................................................................11

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)..............................................................................................13

*Eastman v. Thompson*,
    --- F. Supp. 3d ---, 2022 WL 894256 (C.D. Cal. Mar. 28, 2022)..................5, 18

*Fraihat v. U.S. Immigr. & Customs Enf't*,
    16 F.4th 613 (9th Cir. 2021) ................................................................................12

*Gravel v. United States*,
    408 U.S. 606 (1972)........................................................................................13, 14

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir.1991) ................................................................................12

*Hearst v. Black*,
    87 F.2d 68 (D.C. Cir. 1936)...............................................................14, 15, 16

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) ............................................................................18

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880).............................................................................................14

*McLean v. Fleming*,
    96 U.S. 245 (1877)...............................................................................................19

*McSurely v. McClellan*,
  553 F.2d 1277 (D.C. Cir. 1976) ............................................................................15

*Miller v. Transam. Press, Inc.*,
  709 F.2d 524 (9th Cir. 1983) ...............................................................................13

*Nken v. Holder*,
  556 U.S. 418 (2009) ..........................................................................................9, 11

*Petrella v. MGM*,
  572 U.S. 663 (2014) ...............................................................................................19

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ................................................................................12

*Senate of Cal. v. Mosbacher*,
  968 F.2d 974 (9th Cir. 1992) ................................................................................12

*Senate Permanent Subcomm. v. Ferrer*,
  856 F.3d 1080 (D.C. Cir. 2017) ...............................................................14, 15, 16

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) ............................................................................2, 18

*United States v. Helstoski*,
  442 U.S. 477 (1979) ...............................................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .............................................................................................11, 12

**Constitution**

U.S. Const., Art. I, § 6, cl. 1 ..................................................................................13

U.S. Const., Amend. XII ..........................................................................................2

U.S. Const., Amend. XX .........................................................................................19

**Rule**

Fed. R. App. P. 8 ................................................................................................7, 20

**Legislative Material**

H. Res. 503, 117th Cong. (2021) ....................................................................2, 3, 19

**Other Authority**

Letter from Vice President Michael R. Pence, Vice President of the United States, to "Colleague" (Jan. 6, 2021), https://perma.cc/RUM8-QJBA ...........................3

## **INTRODUCTION**

John Eastman asks this Court to issue an injunction ordering Congress to return and refrain from using documents that he himself provided to Congress just days ago pursuant to a district court order. This emergency request arises now solely because Dr. Eastman waited until the last minute—and beyond—to seek relief from this Court.

Dr. Eastman seeks a flagrantly unconstitutional remedy: an order barring the U.S. House of Representatives from using certain information—which it received pursuant to a court order—as it carries out its core legislative functions under Article I of the Constitution. The Constitutional separation of powers does not allow the judiciary to restrain Congress in this manner, and we are not aware of any court ever issuing such an order against Congress. Indeed, courts on multiple occasions have applied the Speech or Debate Clause to bar such relief.

Even if the Constitution did not bar the relief that Dr. Eastman seeks, he provides no reason why the district court's disclosure order here was incorrect. Because *none* of the factors that bear on whether this Court should grant injunctive relief favors Dr. Eastman, his motion should be denied.

## **FACTUAL BACKGROUND**

On January 6, 2021, rioters seeking to stop the peaceful transfer of power following the 2020 Presidential election launched a violent assault on the United States Capitol.  H. Res. 503, 117th Cong. (2021).  These rioters impeded the constitutionally mandated counting of electoral college votes transmitted from the states, which reflected the results of the 2020 Presidential election.  *See* U.S. Const., Amend. XII.  As the D.C. Circuit has described, "[t]he rampage left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage to the Capitol."  *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021), *inj. denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022).

In response to the unprecedented January 6th attack, the House of Representatives adopted House Resolution 503, "establish[ing] the Select Committee to Investigate the January 6th Attack on the United States Capitol" ("Select Committee").  H. Res. 503 § 1.  This resolution authorizes the Select Committee to:  (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol" "and relating to the interference with the peaceful transfer of power"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) "issue a final report to the House containing such findings, conclusions, and

recommendations for corrective measures … as it may deem necessary." *Id.*
§§ 3(1), 4(a)(1)-(3).

After Joe Biden won the 2020 Presidential election, Dr. Eastman "worked
with President Trump and his campaign on legal and political strategy regarding
the results of the [] election." *Eastman v. Thompson*, --- F. Supp. 3d ---, 2022 WL
894256, at *1 (C.D. Cal. Mar. 28, 2022). As a part of that effort, Dr. Eastman
wrote multiple memos proposing that on January 6th Vice President Pence could
unilaterally stop or alter the electoral vote count. *See id.* at *3-4. Two days before
January 6th, Dr. Eastman met with President Trump, Vice President Pence, and the
Vice President's senior staff in the Oval Office and attempted to persuade the Vice
President "to reject electors or delay the count," neither of which Vice President
Pence believed was within his unilateral authority. *Id.* at *3. Dr. Eastman again
met with the Vice President's staff the next day, seeking to persuade the Vice
President to overturn the election during the Joint Session on January 6th. *See id.*
at *4. The Vice President declined, instead choosing to act "in a manner consistent
with our Constitution, laws, and history."[1]

On the morning of January 6th, Dr. Eastman spoke to a crowd gathered in
front of the White House, falsely claiming that Vice President Pence had the

---

[1] Letter from Michael R. Pence, Vice President of the United States, to
"Colleague" at 3 (Jan. 6, 2021), available at https://perma.cc/RUM8-QJBA.

3

authority and the obligation to stop the counting of electoral votes.  *See id.* at *4. Thousands of people in the crowd marched from the White House to the Capitol and attacked the Joint Session of Congress, the Capitol building, and the police officers defending both.  While the attack on the Capitol was occurring and later that night, Dr. Eastman again implored the Vice President to take advantage of the recess that the violence had caused by delaying the certification of Mr. Biden's election.  *See id.* at *6.

In furtherance of its duty to "investigate the facts, circumstances, and causes" of the January 6th attack, the Select Committee issued a subpoena to Chapman University—where, at the relevant times, Dr. Eastman had been a law professor on a leave of absence, *see* Mot. to Stay Pending Appeal ("Mot.") at 3—requiring the University to "produce all documents and communications in [its] possession, custody, or control attributable to Dr. John Eastman, that are related in any way to the 2020 election or the January 6, 2021 Joint Session of Congress …. during the time period November 3, 2020 to January 20, 2021."  Compl. Ex. B at 4, ECF 1-2.

## PROCEDURAL HISTORY

On January 20, 2022, Dr. Eastman filed his complaint and an Application for a Temporary Restraining Order and Motion for a Preliminary Injunction in an attempt to stop Chapman University from complying with the Select Committee's

subpoena.  ECF 1, 2.  The district court denied the motion, but accepted the

parties' stipulation that Dr. Eastman could raise privilege claims over specific

documents.  Order Den. Pl.'s Mot. for Prelim. Inj. at 15, *Eastman v. Thompson*,

No. 8:22-cv-00099 (C.D. Cal. Jan. 25, 2022), ECF 43.  The parties accordingly set

up a system through which Dr. Eastman would review documents and create

privilege logs identifying the communications he considered to be privileged.  In

response, the Congressional Defendants would note their objections, and the court

would periodically adjudicate those disputes.

The court first did so in a March 28 Order, in which it ordered disclosure of

101 of 111 documents at issue.  *Eastman*, 2022 WL 894256 at *27.  Among other

things, the court concluded that Dr. Eastman and President Trump likely

committed a crime in the course of attempting to and conspiring to obstruct the

Joint Session of Congress, and thus ordered disclosure of one document pursuant

to the crime-fraud exception to the attorney-client privilege and the work product

doctrine.  *Id.* at *20-24.  As the court noted, "[t]he crime-fraud exception applies

when (1) a client consults an attorney for advice that will serve them in the

commission of a fraud or crime, and (2) the communications are sufficiently

related to and were made in furtherance of the crime."  *Id.* at *19 (internal

quotation marks and citation omitted).  With respect to Dr. Eastman, the district

court concluded that:

Dr. Eastman and President Trump launched a campaign to overturn a
democratic election, an action unprecedented in American history.
Their campaign was not confined to the ivory tower—it was a coup in
search of a legal theory. The plan spurred violent attacks on the seat of
our nation's government, led to the deaths of several law enforcement
officers, and deepened public distrust in our political process. . . . If Dr.
Eastman and President Trump's plan had worked, it would have
permanently ended the peaceful transition of power, undermining
American democracy and the Constitution.

*Id.* at *27.

The district court next reviewed and ruled on a subsequent set of privilege
log disagreements in a June 7 Order, finding that 440 documents were privileged,
but ordering Dr. Eastman to disclose to the Select Committee the remaining 159
documents. *See* Order Re Privilege of 599 Docs. Dated Nov. 3, 2020 - Jan. 20,
2021 at 26, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. June 7, 2022),
ECF 356.

Dr. Eastman did not seek any appellate review of either the March 28 Order
or the June 7 Order.

The district court reviewed and ruled on the final set of disputed documents
in an October 19 Order, in which the court ordered Dr. Eastman to disclose an
additional 33 documents to the Select Committee. *See* Order Re Privilege of
Remaining Docs. at 18, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Oct.
19, 2022), ECF 372. Eight of the 33 were to be disclosed because the court
concluded that they were communications in furtherance of the two crimes

identified in the district court's March 28 Order, and thus fell within the scope of the crime-fraud exception. *See id.* at 13-17. The district court gave Dr. Eastman until 2:00 pm Pacific Time on October 28—*i.e.*, nine days—to produce the 33 documents.

On October 27—eight days after the district court's order and one day before his disclosure deadline—Dr. Eastman filed in the district court a Motion to Reconsider or in the Alternative for a Stay Pending Appeal, ECF 373, to challenge the district court's decision with respect to the eight emails the district court had ordered Dr. Eastman to produce pursuant to the crime-fraud exception. Dr. Eastman requested that the district court "reconsider the crime fraud findings in its October 19 order" or, in the alternative, "stay its October 19, 2022 Order . . . and [o]rder Dr. Eastman to file his appeal by a date certain." *Id.* at 8.

On October 28—the production deadline—Dr. Eastman's counsel sent an email to Judge Ikuta at 11:48 am[2] purporting to file an Emergency Motion for Stay with a single circuit judge pursuant to Fed. R. App. P. 8(a)(2)(D). Ex. A at 1. Dr. Eastman did not at that time file this document with this Court through its electronic docketing system.

At 1:29 pm—just 31 minutes before his deadline to produce the documents—Dr. Eastman filed a motion with the district court, requesting an

---

[2] All times noted are Pacific Daylight Time.

extension of his production deadline. The Select Committee opposed the request. In this motion, Dr. Eastman represented that "[i]n the event" the district court was "not inclined to grant a stay of the October 19 order," he "intend[ed] to seek a stay of the order from the Ninth Circuit Court of Appeals pending review by that Court." Mot. to Extend Deadline at 1, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Oct. 28, 2022), ECF 375. Accordingly, Dr. Eastman requested that the district court extend his deadline by one week "to allow the Ninth Circuit time to consider Plaintiff's request to stay this Court's order." *Id*. Dr. Eastman provided no explanation to the district court as to why the nine days between the district court's order and its deadline for production had been insufficient for him to have obtained this Court's review of a stay motion. Nor did he mention in his district court papers his earlier email to Judge Ikuta.

At 1:42 pm, Dr. Eastman filed a notice of appeal in the district court. ECF 376.

At 1:48 pm, the district court denied Dr. Eastman's Motion to Reconsider or in the Alternative for a Stay Pending Appeal. Order Den. Mot. to Reconsider or, in the Alternative, for a Stay at 2-3, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Oct. 28, 2022), ECF 377. The district court held that Dr. Eastman had not made the requisite showing that the court had in its October 19 order failed to consider material facts presented to it before that order was entered. ECF 377 at 2-

8

3.  As for Dr. Eastman's motion for a stay, the court applied the four-factor test of *Nken v. Holder*, 556 U.S. 418, 434 (2009), concluded that none of the factors supported Dr. Eastman, and denied that motion too.  ECF 377 at 3-5.

Two minutes later, at 1:50 pm, the district court also denied Dr. Eastman's Motion to Extend Deadline.  Minute Order, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Oct. 28, 2022), ECF 378.

At 1:53 pm, counsel for the Congressional Defendants received an email from counsel for Dr. Eastman with a link to "the documents we are required to produce under the Court's October 19 order with the exception of those that are the subject of our motion to reconsider."  Ex. A at 2.

At 2:05 pm—five minutes after the district court's disclosure deadline—counsel for the Congressional Defendants received an email from counsel for Dr. Eastman that read:

> Here is a link to the documents for which we intend to seek a stay from Ninth Circuit.  We are producing them to maintain compliance with the district court order but request that you decline from reviewing them until the Ninth Circuit has a chance to rule.

Ex. A at 3.

Because (1) the Select Committee had long ago sought the documents at issue, (2) the district court had specifically ordered disclosure of these very documents after an *in camera* inspection, (3) Dr. Eastman had filed only a very belated motion with the district court to extend the disclosure deadline, (4) the

district court had quickly denied that motion, (5) Dr. Eastman had not filed a stay motion with this Court through its electronic filing system, (6) no stay order had been issued by any judge of this Court, and (7) Dr. Eastman had provided the relevant documents to the Select Committee, the Congressional Defendants began reviewing the documents immediately. Thereafter, Dr. Eastman filed a Motion to Stay Pending Appeal with this Court at 3:08 pm.

In that motion, Dr. Eastman "acknowledge[d] that the motion was not filed for a week after the district court's order," and provided three reasons for the delay: (1) lead counsel "had a number [of] substantive hearings during that time frame," (2) co-counsel "was traveling abroad without ready access to email" until the day of filing, and (3) "[t]he subject materials themselves had to be re-reviewed in light of the district court's ruling." Mot. at 2 n.1. Shortly after that filing, counsel for the Congressional Defendants informed counsel for Dr. Eastman that Congressional Defendants had begun reviewing the documents upon receiving them from counsel for Dr. Eastman.

On October 29, this Court set a briefing schedule in which Congressional Defendants would file a response to Dr. Eastman's motion on November 1, with any reply due on November 2.

Later that day, counsel for the Congressional Defendants sent an email to counsel for Dr. Eastman requesting that, because the matter was now moot, Dr.

10

Eastman withdraw his stay motion "so that neither the court nor the parties waste any time or resources on this matter." Ex. A at 4.

Instead of withdrawing his motion, Dr. Eastman filed a "supplement" to his motion on October 30, even though the briefing schedule ordered by this Court contemplated only that he would file a reply brief. In his "supplement," Dr. Eastman sought "an order directing the return or destruction of the documents and barring further use of them pending the appeal." Suppl. in Supp. of Mot. to Stay Pending Appeal ("Suppl. Mot.") at 4.

## STANDARD

"To determine whether to grant an injunction pending appeal, this court applies the test for preliminary injunctions." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021). "A plaintiff seeking a preliminary injunction must establish that [he] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Where, as here, the injunction is sought against the Government, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 at 435).

11

This Court further applies "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) and *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)). "Under that formulation, serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff[] can support issuance of a preliminary injunction, so long as the plaintiff[] also show[s] that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (internal quotation marks omitted). "To the extent prior cases applying the 'serious questions' test have held that a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, without satisfying the other two prongs, they are superseded by *Winter*, which requires the plaintiff to make a showing on all four prongs." *All. for the Wild Rockies*, 632 F.3d at 1135.

Finally, "[s]erious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 977-78 (9th Cir. 1992) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991)).

## **ARGUMENT**

### I.    **Dr. Eastman Cannot Establish a "Serious Legal Question" on Appeal**

#### A.    **The Speech or Debate Clause and the Separation of Powers Prohibit The Relief Dr. Eastman Seeks**

The Speech or Debate Clause of the Constitution, U.S. Const., Art. I, § 6, cl. 1, bars the relief that Dr. Eastman seeks.  "The purpose of the [Speech or Debate] Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently …. [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)); *see also United States v. Helstoski*, 442 U.S. 477, 491 (1979) ("This Court has reiterated the central importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the legislative sphere.").  As the Supreme Court has instructed, the Clause must be broadly construed and applied because that was "the conscious choice of the Framers buttressed and justified by history."  *Eastland*, 421 U.S. at 510 (internal quotation marks omitted).

*Eastland* emphasized that Speech or Debate Clause immunity is "absolute" and covers all actions "within the sphere of legitimate legislative activity."  421 U.S. at 501 (quotation marks omitted); *see also Miller v. Transam. Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983) ("Once the legislative-act test is met, the privilege is

13

absolute.").  As the Supreme Court has stressed, the Clause applies to "things generally done in a session of the House by one of its members in relation to the business before it."  *Gravel*, 408 U.S. at 617-18 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)).

The D.C. Circuit—the only court of appeals to have addressed the question—has held repeatedly that the Speech or Debate Clause and the separation of powers prevent federal courts from ordering a Congressional committee to return, or to refrain from using, materials in its possession.  *See, e.g., Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995); *Hearst v. Black,* 87 F.2d 68 (D.C. Cir. 1936).  Most recently, in *Senate Permanent Subcomm. on Investigations v. Ferrer*, the D.C. Circuit rejected a plaintiff's demand that a Congressional committee return documents produced in response to a subpoena.  As the D.C. Circuit explained, "the separation of powers, including the Speech or Debate Clause, bars this court from ordering a Congressional committee to return, destroy, or refrain from publishing the subpoenaed documents" because the Clause "affords Congress a privilege to use materials in its possession without judicial interference."  *Ferrer*, 856 F.3d at 1086 (internal quotation marks omitted).

14

The D.C. Circuit reached the same conclusion even where—unlike here—the plaintiff alleged that Members of Congress acquired documents illegally. *See Brown & Williamson Tobacco Corp.*, 62 F.3d at 416. "The law is clear," the court concluded, "that even though material comes to a legislative committee by means that are unlawful or otherwise subject to judicial inquiry the subsequent use of the documents by the committee staff in the course of official business is privileged legislative activity." *Id.* at 417 (quoting *McSurely v. McClellan,* 553 F.2d 1277, 1296–97 (D.C. Cir. 1976) (en banc), *cert. granted*, 434 U.S. 888, *cert. dismissed sub nom. McAdams v. McSurely*, 438 U.S. 189 (1978)); *see also id.* at 416 ("The [Speech or Debate Clause] also permits Congress to conduct investigations and obtain information without interference from the courts, at least when these activities are performed in a procedurally regular fashion.").

Both *Ferrer* and *Brown & Williamson* relied, in turn, on *Hearst v. Black*, in which the D.C. Circuit held that there was no judicial authority to order a Congressional committee already in the possession of documents produced by a third party to return or refrain from using such documents:

> If a court could say to the Congress that it could use or could not use information in its possession, the independence of the Legislature would be destroyed and the constitutional separation of the powers of government invaded. Nothing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others.

87 F.2d 68, 71-72 (D.C. Cir. 1936).

Consistent with the holdings of *Ferrer*, *Brown & Williamson*, and *Hearst*, the Speech or Debate Clause and the Constitutional separation of powers doctrine prohibit issuance of the order that Dr. Eastman seeks.

### B. Dr. Eastman Presents No Documentary Evidence Indicating That the District Court Erred

Dr. Eastman has submitted the substance of his merits arguments *ex parte*, thereby depriving Congressional Defendants of a meaningful opportunity to respond. *See* Mot. at 7. Nevertheless, Congressional Defendants have reviewed the subset of documents in the Select Committee's possession that Dr. Eastman identifies as providing additional context for the eight disputed documents. *See* Dkt. 2-4, Notice of Lodging and Lodging of Documents Relevant to Motion for Stay Pending Appeal. None of these documents casts doubt on the district court's factual findings regarding the nature of the eight disputed documents. To the contrary, these documents do little more than attach and confirm the filing of President Trump's Georgia verification that the district court described as incorporating "specific numbers of voter fraud" "that President Trump knew … were wrong" but nevertheless "continued to tout … both in court and to the public." ECF 372 at 17; Ninth Cir. Dkt. 2-4 (containing documents produced to Select Committee that Dr. Eastman identifies as relevant to his appeal). Such

documents do not provide any reason to believe that Dr. Eastman is likely to prevail on appeal.[3]

## II. Dr. Eastman Has Not Established Irreparable Harm

Dr. Eastman has not established that he will suffer irreparable harm absent issuance of an injunction. The only irreparable harm that Dr. Eastman identifies is disclosure of assertedly privileged information. *See* Mot. at 8-9. But even assuming *arguendo* that the district court erred by ordering production of the documents at issue, the disclosure was already made by Dr. Eastman's counsel, and cannot be cured by an injunction. Dr. Eastman's supplemental brief, although amending the remedy that he seeks, does not allege any additional irreparable harm beyond that which Dr. Eastman claims to have allegedly suffered.

As Dr. Eastman acknowledges, he intentionally produced the disputed documents to the Select Committee in compliance with the operative district court order in this case. *See* Suppl. Mot. at 3. Having previously made clear to Dr. Eastman's counsel that the Select Committee would not agree to a temporary stay, and there being no court-ordered stay, the Select Committee reviewed those documents. *See* Suppl. Mot. at 3 & Ex. A at 5. Thus, to the extent "[d]isclosure of

---

[3] This Court may wish to consider whether to disregard entirely Dr. Eastman's supplemental brief, because such a filing was not contemplated by the briefing schedule that this Court had set and sought an entirely different type of relief from his original motion. If so, this case should be dismissed as moot, because the disclosure complained of in his initial brief had already occurred.

17

privileged information is itself an[] irreparable injury," as Dr. Eastman alleges (Mot. at 8), his motion simply arrives too late.

Furthermore, even if Dr. Eastman's supplemental brief had alleged that additional irreparable harm would arise from the Select Committee's retention and use of the disclosed documents, such allegations would not suffice.  Mere speculation "cannot be the basis for a finding of irreparable harm."  ECF 377 at 4 (citing *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007)).

Accordingly, Dr. Eastman has not shown the irreparable injury necessary to sustain an injunction pending appeal.

## III.  The Balance of Equities and Public Interest Favor the Select Committee

The equities and public interest strongly favor the Select Committee.  The Select Committee is investigating a grave assault on our Nation's democracy, whose seeds were planted months before January 6th.  The completion of this investigation in a thorough fashion is of immense public interest.  As the D.C. Circuit has held, the Select Committee's interest in studying the January 6th attack and proposing remedial measures is "vital" and "uniquely weighty."  *Trump v. Thompson*, 20 F.4th at 17, 35.

As the district court concluded, Dr. Eastman's legal advice was related to and in furtherance of the likely commission of at least two federal felonies intended to thwart the peaceful transfer of Presidential power.  *Eastman*, 2022 WL

18

894256 at *19-24; ECF 372 at 15-17. These matters are of significant interest to the Select Committee and the Congress as a whole. Indeed, they form the foundation of the Select Committee's efforts to fashion legislative remedies so that an attack of this kind never happens again.

Time is now of the essence. The Select Committee is authorized through the end of the current Congress, which expires on January 3, 2023. *See* H. Res. 503 § 7(a); *see also* U.S. Const., Amend. XX, § 1. Far from preserving the status quo, further delay would make it extremely difficult for the Select Committee to incorporate the lessons from these highly pertinent records into its final report and legislative recommendations.

On the other side of this ledger, Dr. Eastman's own delays weigh heavily against him. *See McLean v. Fleming*, 96 U.S. 245, 251 (1877) ("Unreasonable delay in bringing a suit is always a serious objection to relief in equity[.]"); *Petrella v. MGM*, 572 U.S. 663, 668 (2014) ("[A] plaintiff's delay can always be brought to bear … in determining appropriate injunctive relief[.]"). Dr. Eastman had nine days to seek relief from this Court. ECF 372 at 18. He nevertheless waited until the day before his production deadline to act, filing a flurry of last-

19

minute requests to resolve an emergency of his own making—and waited until after the production deadline to file a proper request for relief with this Court. [4]

This Court should not alter the status quo and order a Congressional committee to return and disregard material that it received due to compliance with a court order. Besides the grave Constitutional concerns, such an order is simply not warranted to save Dr. Eastman from his own litigation missteps.

## CONCLUSION

For the foregoing reasons, the Court should deny Dr. Eastman's emergency motion for a stay pending appeal.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
 *General Counsel*
TODD B. TATELMAN
 *Principal Deputy General Counsel*
ERIC R. COLUMBUS
 *Special Litigation Counsel*

---

[4] Dr. Eastman's email to Judge Ikuta, purportedly pursuant to Fed. R. App. P. 8(a)(2)(D), was not a proper filing. That rule provides that "[a] motion under this Rule 8(a)(2) *must be filed with the circuit clerk* and normally will be considered by a panel of the court." Fed. R. App. P. 8(a)(2)(D) (emphasis added). But Dr. Eastman did not file his motion with the circuit clerk until after the production deadline and after he produced the documents. Even if the second sentence of Fed. R. App. P. 8(a)(2)(D) is interpreted to allow submission of a motion to a single judge, it does so only "in an exceptional case in which time requirements make that procedure impracticable." There was nothing exceptional about this case, and the time requirement—nine days in which to seek appellate review—was far from "impracticable."

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov


*Counsel for the Congressional Defendants-Appellees*

November 1, 2022

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) and 9th Cir. R. 27-1(d).  This document is proportionally spaced and, not counting the items excluded from the length by Fed. R. App. P. 32(f), contains 4,725 words which when divided by 280 does not exceed the 20-page limit of 9th Cir. R. 27-1(d) as calculated under 9th Cir. R. 32-3.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

*/s/ Douglas N. Letter*
Douglas N. Letter

November 1, 2022

## CERTIFICATE OF SERVICE

I certify that on November 1, 2022, I filed one copy of the foregoing

Opposition to Plaintiff-Appellant's Motion to Stay Pending Appeal via the

CM/ECF system of the United States Court of Appeals for the Ninth Circuit, which

I understand caused service on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter