**No. 22-56013**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JOHN C. EASTMAN,

*Plaintiff-Appellant*,

v.

BENNIE G. THOMPSON, *et al.*,

*Defendants-Appellees,*

---

On Appeal from a Final Order of the U.S. District Court for the Central District of California (No. 8:22-cv-00099) (Hon. David O. Carter, U.S. District Judge)

---

## PLAINTIFF-APPELLANT'S PETITION
## FOR REHEARING EN BANC

---

Anthony T. Caso (Cal. Bar #88561)
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164
Email: atcaso@ccg1776.com

Charles Burnham (D.C. Bar# 1003464)*
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
Email: charles@burnhamgorokhov.com
* *application for admission forthcoming*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

I.  STATEMENT OF REASONS FOR EN BANC REVIEW ........................1

II.  PROCEDURAL BACKGROUND ...............................................1

III. ARGUMENT.............................................................7

   a.  The Panel's Decision Conflicts With *Munsingwear* and Its Progeny. ....7

     i.  The *Munsingwear* rule, as clarified by *Bancorp*, requires vacatur unless mootness was caused by the party appealing an adverse decision. ..........................................................7

     ii.  The panel identified no action by Appellant that caused or contributed to mootness; its summary order denying vacatur is therefore in conflict with Supreme Court and Ninth Circuit precedent. .......................................................10

   b.  Given the parties involved, this case has a dimension of exceptional importance that also warrants rehearing *en banc*. ................................15

CERTIFICATE OF WORD COUNT ...................................................17

CERTIFICATE OF SERVICE .........................................................18

# TABLE OF AUTHORITIES

**Cases**

*Board of Flour Inspectors for Port of New Orleans v. Glover*,
    161 U.S. 101 (1896) .................................................................................. 7

*Brownlow v. Schwartz*,
    261 U.S. 216 (1923) ............................................................................... 12

*Commercial Cable Co. v. Burleson*,
    250 U.S. 360 (1919) ................................................................................. 8

*Dilley v. Gunn*,
    64 F.3d 1365 (9th Cir. 1995) ......................................................... passim

*Duke Power Co. v. Greenwood County*,
    299 U.S. 259 (1936) ................................................................................. 7

*Great Western Sugar v. Nelson*,
    442 U.S. 92 (1979) ................................................................................. 10

*Heitmuller v. Stokes*,
    256 U.S. 359 (1921) ................................................................................. 8

*Karcher v. May*,
    484 U.S. 72 (1987) ................................................................................. 11

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ................................................................................. 3

*Ochoa v. Lopez*,
    CV 11-9239 AG (MLGx), 2016 WL 9712071 (C.D. Cal. June 20, 2016) .......... 12

*Pub. Utilities Comm'n of State of Cal. v. FERC*,
    100 F.3d 1451 (9th Cir. 1996) ........................................................... 9, 12

*Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*,
    686 F.2d 720 (9th Cir.1982) ............................................................... 9, 10

*Shillitani v. United States*,
    384 U.S. 364 (1966) ............................................................................... 12

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
    513 U.S. 18 (1994) ......................................................................... passim

*United States v. Hamburg-Amerikanische Packet-Fahrt-Actien Gesellschaft*,
    239 U.S. 466 (1916) ................................................................................. 8

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ........................................................................... passim

**Statutes**

Cal. Bus. & Prof. Code § 6068(e)(1) ................................................... 2, 4

**Rules**

F.R.A.P. 8(d)(2) ................................................................................... 6, 11

Plaintiff-Appellant John C. Eastman respectfully petitions this Court for re-hearing *en banc* of the panel decision not to vacate the district court decision de-spite the case having become moot while the appeal was pending.

## I.    STATEMENT OF REASONS FOR EN BANC REVIEW

The panel decision conflicts with decisions of the Supreme Court and this Court's prior opinions in *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), *Dilley v. Gunn*, 64 F.3d 1365 (9th Cir. 1995), and their progeny.

The panel decision also presents a question of exceptional importance.  The district court's crime-fraud holding, which Appellant has described as "clearly er-roneous" when viewed in the context of numerous privileged communications, has cast aspersions not just on Appellant but on his former client, the former President of the United States and current candidate for the presidency.  The ramifications, both political and legal, of such a holding are significant, and Appellant, both on his own behalf and for his client's benefit, should not have to be subjected to those ramifications on an ongoing basis when he was deprived of his right to appeal by the actions of the government that mooted the appeal.

## II.    PROCEDURAL BACKGROUND

Plaintiff-Appellant, Dr. John Eastman, a long-time professor of constitu-tional law and former Dean at Chapman University's Fowler School of Law, repre-sented former President Donald Trump in several election-related matters

1

following the 2020 presidential election. Ostensibly acting pursuant to its authority to investigate the incursion into the U.S. Capitol that occurred on January 6, 2021, the House Select Committee to Investigate the January 6th Attack on the United States Capitol, Defendant-Appellee here, issued a subpoena to Dr. Eastman's former employer for an extremely broad range of documents and communications for which, contrary to an agreement by which Eastman "removed" his files upon his departure, Chapman had retained archival copies. Chapman identified over 20,000 documents totaling over 94,000 pages that were responsive to the subpoena and the search terms that the Select Committee had provided, and despite full knowledge that those documents likely contained privileged communications, Chapman notified Dr. Eastman on January 18, 2022 that it would produce all 94,000 pages to the Select Committee three days later absent a court order directing otherwise.

In order to comply with his ethical duty to protect confidential communications from his clients, *see* Cal. Bus. & Prof. Code § 6068(e)(1) ("It is the duty of an attorney … To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"), Dr. Eastman successfully sought a temporary restraining order from the district court below, blocking Chapman's production. ECF 1, 12. The district court then directed Dr. Eastman to review the 94,000 pages of documents and assert, via a privilege log, any claims of

privilege that he thought warranted and to produce the remaining non-privileged documents to the Select Committee. That process proceeded at a clip of 1,500 hundred pages a day from late January through mid-April. At the Select Committee's request, the Court ordered that documents dated between January 4 and 7, 2021, be reviewed first and that disputes over the privilege assertions be briefed by the parties and resolved by the court after an *in camera* review of the disputed documents while the review and production of the remaining documents continued apace. In March 2022, the district court reviewed this first batch of 111 documents, overruled the privilege claims for 100 of them and ordered the production of a single privileged document pursuant to the court's finding that it more likely than not was related to the crimes of corruptly attempting to influence or obstruct an official proceeding of government and fraud against the United States. Because the document was not authored by Dr. Eastman nor copied to his client, and because Supreme Court precedent counseled against being able to take an interlocutory appeal from a privilege ruling,[1] Dr. Eastman chose not to appeal that decision.

Once the privilege review of the remainder of the documents was completed, Dr. Eastman produced more than 1,000 additional documents over which he had initially asserted privilege but which he and his counsel determined were similar enough to documents as to which the court had overruled the claims of privilege in

---

[1] *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009).

its March order to warrant production. The Select Committee likewise withdrew its objections to Dr. Eastman's claims of privilege over 721 of the approximately 2000 documents still in dispute. It asked for the court's *in camera* review of 599 documents and notified the court that it would hold its objections to the other 576 disputed documents "in abeyance."

Following additional briefing and *in camera* review, the district court in June upheld Dr. Eastman's claims of privilege over 440 of the 599 Documents in whole and another 15 in part, directed production of 144, and again held that a single document which it found to be privileged should be disclosed pursuant to the court's determination of a crime-fraud exception. As with the prior document the court ordered produced pursuant to its finding a "crime-fraud" exception, that document was not authored by Dr. Eastman nor copied to his then-client, so Dr. Eastman produced the document rather than press an interlocutory appeal for which jurisdiction was uncertain.

In August, the Select Committee requested that Dr. Eastman produce the final 576 disputed documents – those over which Dr. Eastman had asserted privilege but as to which the Select Committee had held its objections "in abeyance." Because acceding to the Select Committee's request would have been unethical, *see* Cal. Bus. & Prof. Code § 6068(e)(1), *supra*, Dr. Eastman declined (although he did produce another 14 documents that, after further review, were determined not to be

privileged based on the reasoning of the district court's prior rulings) and another round of briefing and *in camera* review was ordered. Following that review, the district court upheld Dr. Eastman's claims of privilege over 529 documents, over-ruled the claims of privilege for 25 documents (4 of which were held to be partially privileged), and held that 8 privileged documents had to be produced pursuant to the court's determination of a "crime-fraud" exception. ECF 372.

As the district court acknowledged, its decision addressed the "final" batch of documents at issue in the case, so any concerns about this Court's jurisdiction to hear an interlocutory appeal no longer existed. And this time, the court's crime-fraud holding involved communications authored by Dr. Eastman and a verification signed by his client. An appeal was not only warranted, but necessary, not only to protect his own interests but also those of his former client.

Dr. Eastman first filed with the district court a motion for reconsideration or, in the alternative, a stay pending appeal, supported by an *in camera* declaration referencing roughly fifty privileged documents that had previously been provided for the court's *in camera* review and that placed the disputed documents in proper context. ECF #373-74. As the production deadline hour approached, he then moved the district court for an extension of the production deadline. ECF #375. All three requests were denied, ECF #377-78, but Dr. Eastman also filed a motion for stay pending appeal with this Court, submitted, as the looming deadline made

necessary, to a single circuit judge pursuant to F.R.A.P. 8(d)(2) and after notification to the court clerk. Counsel for Defendants were copied on the transmittal of the motion for a stay pending appeal.[2] *See* Dkt. #7-2.

The stay motion was not ruled upon by the production deadline set by the district court, so in order to comply with the district court's order while preserving his right to appeal, Dr. Eastman provided to the Select Committee's counsel a link to a dropbox folder containing the 8 disputed documents with a request that the documents not be accessed until the pending stay motion was ruled upon. Instead of honoring that request, the Select Committee accessed and downloaded the documents for its own internal review. Dkt. 7-1, p. 10. And while the stay motion was still pending, it disclosed the link to the documents in a public filing to this Court, thereby mooting Dr. Eastman's appeal. Dkt. 7-2, p. 3; Dkt. #8.

Dr. Eastman then moved to dismiss his appeal as moot and, pursuant to the Supreme Court's decision in *Munsingwear*, requested that the lower court's opinion be vacated. Dkt. #10. Three business days later, the panel issued a summary 2-page order dismissing the appeal as moot but denying Dr. Eastman's request that the district court order be vacated. Citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994), the panel simply noted in a parenthetical

---

[2] The motion for stay was electronically filed with this court later in the day once a notice of appeal had been docketed in the district court and electronic filing in this Court was possible. Dkt. #2.

that the "*Munsingwear* rule is inapplicable when mootness results from circum-

stances attributable in part to appellant's actions." Dkt. #13. The panel provided

no explanation as to which actions attributable to appellant resulted in the appeal

becoming moot that would render the *Munsingwear* rule inapplicable.

## III.  ARGUMENT

### a.  The Panel's Decision Conflicts With *Munsingwear* and Its Progeny.

#### i.  The *Munsingwear* rule, as clarified by *Bancorp*, requires vacatur unless mootness was caused by the party appealing an adverse decision.

"The leading case on vacatur is" *Munsingwear*. *Dilley*, 64 F.3d at 1369. In

that case, the Supreme Court described the need to vacate a lower court decision in

a case that had become moot on appeal "through happenstance" as a "the duty of

the appellate court." *Munsingwear*, 340 U.S. at 39 (quoting *Duke Power Co. v.

Greenwood County*, 299 U.S. 259, 267 (1936)). The Court declined to vacate the

lower court decision in the case because, unlike here, "the [appellant] United States

made no motion to vacate the judgment" but rather "acquiesced in the dismissal."

*Id.* at 40.

The *Munsingwear* opinion includes a lengthy list of cases demonstrating the

"established practice" of vacating a decision in cases that had become moot on ap-

peal. *Id.* at 39 n.2. *See, e.g.*, *Board of Flour Inspectors for Port of New Orleans v.

Glover*, 161 U.S. 101 (1896) (vacated after mootness from repeal of statute);

*United States v. Hamburg-Amerikanische Packet-Fahrt-Actien Gesellschaft*, 239

U.S. 466, 478 (1916) (vacated after onset of WWI mooted the case). As the Supreme Court held in *Hamburg*, "the ends of justice exact that the judgment below should not be permitted to stand when, without any fault of the government, there is no power to review it upon the merits." 239 U.S. at 478. These cases were mooted by actions beyond the control of the parties in the case—either the party who prevailed below or the party who appealed from an adverse judgment.

In several other cases cited in *Munsingwear*, the mootness was caused, as here, by the prevailing party. In *Commercial Cable Co. v. Burleson*, 250 U.S. 360 (1919), for example, an action challenging the government's appropriation of private cable lines became moot when the government returned possession and reimbursed for the revenues. The Court held that "the decrees below should be reversed and the cases remanded to the lower court, with directions to set aside the decrees…." *Id.* at 363. Similarly, *Heitmuller v. Stokes*, 256 U.S. 359 (1921), involved an action to recover possession of rental property. The tenant lost in the trial court but while the appeal was pending, the plaintiff sold the property and thereby mooted his case to recover possession. The Court not only reversed the lower court decision with instructions to dismiss the complaint, but also directed that the costs of the appeal "should be paid by the defendant in error"—that is, the plaintiff whose actions had mooted the case. *Id.* at 363. "[T]hat vacatur must be granted where mootness results from the unilateral action of the party who

prevailed in the lower court" was reconfirmed in *Bancorp*, 513 U.S. at 23.

*Bancorp* clarified that *Munsingwear*'s vacatur rule was "inapplicable" when mootness was caused by the appellant itself, however. *Id.* at 26. The parties in *Bancorp* reached a settlement while the appeal was pending, thereby mooting the case. In such a case, the Court held, "[t]he judgment is not unreviewable, but simply unreviewed by [the appellant's] own choice," thereby rending vacatur inappropriate. *Id.* at 25; *see also Dilley*, 64 F.3d at 1370.

*Munsingwear* and *Bancorp* thus create a line between those cases requiring vacatur because mooted by "happenstance" or by the prevailing party, and those not requiring vacatur because mooted by the party appealing an adverse ruling. For the former, this Court has "treated *automatic* vacatur as the 'established practice.'" *Dilley*, 64 F.3d at 1369 (citing cases); *see also Pub. Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1461 (9th Cir. 1996) (mootness resulting from happenstance or from the "unilateral action of the party who prevailed below" *does* require vacatur." (emphasis in original, quoting *Bancorp*, 513 U.S. at 25).

In the latter set of cases, this Court has applied *Bancorp*'s "'exception' to the established practice of automatic vacatur … 'when the appellant has by his own act caused the dismissal of the appeal.'" *Id.* (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir.1982)). Both the Supreme Court and this Court have focused on whether an appellant's acts

9

mooting a case were "voluntary." *Bancorp*, 513 U.S. at 25 ("The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by *voluntary* action." (emphasis added)); *Dilley*, 64 F.3d at1371 (same, quoting *Bancorp*). And even then, this Court has not held that vacatur *had* to be denied, but rather has on occasion remanded for further consideration of the equities of the particular circumstances in which appellant's actions caused or contributed to the mootness. *See, e.g.*, *Ringsby*, 686 F.2d at 722.

> ### ii. The panel identified no action by Appellant that caused or contributed to mootness; its summary order denying vacatur is therefore in conflict with Supreme Court and Ninth Circuit precedent.

Given the importance of the distinction between mootness caused by the voluntary action of an appellant challenging an adverse ruling, and that caused either by happenstance or by the prevailing party, it was incumbent upon the panel to identify voluntary actions by appellant that caused or contributed to the case having become moot. *See Ringsby*, 686 F.2d at 722-23 (noting that in *Great Western Sugar v. Nelson*, 442 U.S. 92 (1979), the Supreme Court reversed a ruling by the 10th Circuit that, "without explanation," had declined to vacate a district court decision that had become moot on appeal, where neither the facts nor the appellate court's order "provided any clear basis for the court's decision to depart from the procedure outlined in *Munsingwear*."). The panel identified no such action, merely parenthetically asserting that the "*Munsingwear* rule is inapplicable when

mootness results from circumstances attributable in part to appellant's actions." Dkt. #13 (quoting *Bancorp*.)  However, there is no voluntary action by Appellant to which the mootness can be attributed, even in part, and the panel decision is therefore incompatible with *Munsingwear* and its progeny.

As noted above, Appellant certainly did not acquiesce in the lower court's decision.  *Cf. Munsingwear*, 340 U.S. at 40.  He moved for reconsideration or, alternatively, for a stay pending appeal.  He moved for an extension of the production deadline.  He even filed an emergency motion for stay pending appeal with a single Ninth Circuit Judge, as permitted by F.R.A.P. 8(d)(2), *see* Dkt.#7-2 p. 1, followed by a notice of appeal and electronic filing of the motion for stay once the appeal had been docketed, Dkt. #2.  *Cf. Karcher v. May*, 484 U.S. 72, 82, 83 (1987) (denying vacatur where the case became moot "when the losing party … declined to pursue its appeal.").

After the motions for reconsideration, stay, and extension were denied by the district court, but while the motion for stay pending appeal was still pending before a judge of this Court, Appellant provided a link to Defendant's counsel to a dropbox folder containing the disputed documents *in order to comply with the district court's production order* and not be found to be in contempt.  In order to preserve his appellate rights, however, Appellate expressly requested that the documents not be viewed or downloaded until the still-pending motion for stay was ruled upon.

Dkt. #7-2 p. 3.

Complying with the district court's order is certainly not a "voluntary" act by Appellant; it was, instead, a compelled act, enforceable by the contempt power of the district court. *See, e.g.*, *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Ochoa v. Lopez*, CV 11-9239 AG (MLGx), 2016 WL 9712071, at *1 (C.D. Cal. June 20, 2016) ("A court has in-herent power to enforce its orders by holding those who violate those orders in civil contempt and issuing corresponding sanctions.") (citing *Shillitani*, 384 U.S. at 370). Moreover, in requesting that the Defendants not view or download the docu-ments while his motion for stay was pending, Appellant did what he could to pre-serve his appellate rights while complying with the district court's order. *Cf. Pub. Utilities Comm'n*, 100 F.3d at 1461 (noting the exception to vacatur "if *the party seeking appellate relief* **fails to protect itself** or is the cause of subsequent moot-ness." (citing *Munsingwear*¸ 340 U.S. at 40; *Dilley*, 64 F.3d at 1370-71, italicized emphasis in original; bold emphasis added).

*Brownlow v. Schwartz*, 261 U.S. 216 (1923), cited in *Munsingwear*, is on point. The case involved a petition for a writ of mandate for the issuance of a building permit. The trial court denied the petition, but that decision was reversed on appeal and remanded with directions to issue the permit. The building inspector

filed a petition for rehearing, which was denied. He also applied for a writ of error to the Supreme Court, but before that writ of error was allowed, he issued the building permit in order to comply with the decision of the court of appeals, thereby mooting the case. The Supreme Court nevertheless reversed the judgment below and ordered that the action be dismissed. *Id.* at 218-19.

Appellant's action complying with the district court's order, particularly as accompanied by an express request that the Select Committee not access the contested documents while the stay motion was pending, is therefore not the kind of "voluntary action" that precludes vacatur.

The Select Committee has implied that Appellant's failure to deactivate the link to the contested documents was the reason for the case becoming moot when the Select Committee itself provided that link in a public filing. Dkt. #8. Such a contention is unavailing, for two reasons. First, *inaction* cannot be viewed as a "voluntary action" that would preclude vacatur under *Bancorp*. Second, the Select Committee's implication of some error on Appellant's part in not immediately deactivating the link is contrary to the parties' established production practice in this case. Every weekday between late January and mid-April, and on several days in May and June, Appellant produced documents to the Select Committee by providing access to a document folder and keeping that access open for 1 week. He had no reason to truncate that established timeline by deactivating the most recent link

13

sooner—indeed, had he done so, it is quite possible that the Select Committee would have complained to the district court about its lack of access. More significantly, Appellant certainly had no reason to anticipate that the Select Committee would gratuitously provide the link to the documents in a public filing just 1 business day after Appellant provided it. Appellant's *inaction* and supposed failure to deactivate the link is therefore not a voluntary action that would preclude the normal automatic grant of vacatur under *Munsingwear*.

Finally, the Select Committee has suggested that Appellant bears responsibility for the mootness it caused by not filing his motions for reconsideration and stay until the day before the production deadline. Dkt. #8 pp. 1, 7, 8. As Appellant has noted previously, Dkt. #2 p. 2 n.1, the motion for reconsideration was filed merely a week after the district court's order, and during that week his lead counsel had three substantive district court hearings and a trial, while his local counsel was abroad without ready access to email. But even if Appellant could have filed the motion for reconsideration earlier, the fact that it was only filed a day before the production deadline is hardly the kind of voluntary action by Appellant that the courts have previously held to render the *Munsingwear* rule inapplicable. Moreover, even if the resulting truncated timeline for obtaining a stay pending appeal can be said to have *created an opportunity* for the Select Committee to moot the case, it was still the Select Committee's unilateral decision to access the disputed

documents while the stay motion was pending despite Appellant's request not to do so, and its unilateral action to provide the link to those documents in a public filing (despite warnings from the ECF system regarding a filer's responsibility not to disclose sealed documents), that is the sole cause of mootness. Nothing Appellant did forced the Committee to take those actions; indeed, he expressly requested that the Select Committee *NOT* access the contested documents while the stay motion was pending.

In sum, the mootness here was caused by the unilateral action of the Select Committee, the prevailing party below. Vacatur should be "automatic" under this Court's precedents. The panel decision to the contrary is simply incompatible with the Supreme Court's decisions in *Munsingwear* and its progeny, and numerous decisions of this Court. The panel decision should be reversed by the *en banc* court.

### b. Given the parties involved, this case has a dimension of exceptional importance that also warrants rehearing *en banc*.

As set out in subpart a, rehearing *en banc* is necessary to ensure consistency with controlling Supreme Court precedent and prior decisions of this Court. But given the parties in involved in this case – a high-profile (and controversial) Select Committee of the U.S. House of Representatives and an attorney who represented the former President of the United States - and given that the decision below also implicates the former President (and current candidate for President) himself, this

case has a dimension of exceptional importance that strongly counsels in favor of getting the legal determination right. Because of the actions by the Select Committee mooting this case, Appellant (on his own behalf and also for the benefit of his former client) has been deprived of his statutory right to appeal what he has described as the "clearly erroneous" holding of the district court below and thereby to exonerate himself from the implications of that decision. Under the *Munsingwear* rule, the decision of the district court below should be reversed or, at the very least, vacated. The panel's summary decision declining to do so should be reconsidered and reversed by the *en banc* Court.

November 17, 2022                    Respectfully submitted,

                                   /s/ Anthony T. Caso
                                  Anthony T. Caso (Cal. Bar #88561)
                                  CONSTITUTIONAL COUNSEL GROUP
                                  174 W Lincoln Ave # 620
                                  Anaheim, CA 92805-2901
                                  Phone: 916-601-1916
                                  Fax: 916-307-5164
                                  Email: atcaso@ccg1776.com

                                  Charles Burnham (D.C. Bar# 1003464)*
                                  Email: charles@burnhamgorokhov.com
                                  BURNHAM & GOROKHOV PLLC
                                  1424 K Street NW, Suite 500
                                  Washington, D.C. 20005
                                  Telephone: (202) 386-6920
                                  *application for admission forthcoming*

## CERTIFICATE OF WORD COUNT

I hereby certify that the above petition for rehearing *en banc* consists of 3845 words exclusively of tables, in accord with F.R.A.P. 35(b)(2)(A).

Dated:  November 17, 2022          Respectfully submitted,


/s/Anthony T. Caso
Anthony T. Caso (Cal. Bar #88561)
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164
Email:  atcaso@ccg1776.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2022, I electronically filed

the foregoing with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be

served by the appellate CM/ECF system.

Dated: November 17, 2022      Respectfully submitted,

/s/Anthony T. Caso
Anthony T. Caso (Cal. Bar #88561)
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164
Email: atcaso@ccg1776.com